E. K. BEARDEN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14752.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1969.

Rehearing Denied April 9, 1969.

Second Rehearing Denied Oct. 7, 1969.

---

J. B. Champion, Jr., Ardmore, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Burke Mordy, Dist. Atty., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, E. K. Bearden, hereafter referred to as defendant, was tried by a jury in the District Court of Carter County on a charge of murder, but was found guilty of the lesser offense of manslaughter in the first degree. On October 26, 1967, the jury returned its verdict and assessed punishment at fifteen years confinement in the state penitentiary. After the verdict was returned and accepted by the trial court, the court announced that judgment and sentence would be passed at nine o'clock A.M. on October 30, 1967.

On the date set for passing judgment and sentence, the defendant was present in court, but his defense counsel failed to appear; so, the trial judge continued the imposition of judgment and sentence until the following November 6th. On November 3rd, through his defense counsel, de-

fendant filed a Motion for New Trial setting forth nine citations of error, to which was attached affidavits of persons who could have, but did not testify in defendant's behalf. On November 6th, defendant's motion for new trial was overruled, and judgment and sentence was imposed as assessed by the jury. Defendant served his notice of appeal and was permitted to remain free on bail.

This appeal has caused this Court considerable concern. In this case defense counsel intentionally refused to offer a defense for his client, because he was suffering from stomach ulcers. Consequently, it is contended that defendant was denied due process of law, as guaranteed by both the Constitution of the State of Oklahoma and the Constitution of the United States. However, when the record is considered in its entirety, it becomes apparent that if there was an absence of due process, it came about as the result of defendant's own choice, which was made with full knowledge of the consequences, and with knowledge of the proceedings which were being undertaken. In short, if such condition existed, it was of defendant's own making and not that of the trial court or the district attorney.

Defendant recites three propositions in his brief, which was submitted to the Court "out of time." Those propositions state, as follows:

1. "It is fundamental error and in violation of due process to force a trial to proceed and allow a conviction to stand where it is known that the defendant has a good and sound defense which was not presented and where it is further known that the jury never really heard the true facts."

2. "It is basic error where the district attorney knows of facts favorable to the defendant and withholds the same from the jury permitting it to reach its verdict without being so advised."

3. "The record shows over and over that the trial judge in this case was prejudiced against counsel, defendant and that by his forcing the trial through when he knew that the defendant had a side to present and good solid defense, he committed reversible error."

The State's brief was provided by the District Attorney for the 20th Judicial District, who also prosecuted defendant. It is not necessary to set forth verbatim the two propositions contained in the State's brief.

This Court can take judicial notice of the fact that this defendant is no stranger to criminal trial proceedings. He has been in this Court on several occasions. Also, defendant's knowledge of what was transpiring is reflected in the record by defendant's actions and conversations with the trial judge, prior to and during the trial. Likewise, this Court has full knowledge that the defense counsel is a capable attorney of considerable experience in criminal law, as well as being a most capable trial lawyer.

The record reflects that there seemed to be little doubt in the trial judge's mind that defense counsel was experiencing some physical difficulty, because of his stomach ulcers; and we likewise accept that premise from the record. But we also observe that the trial judge offered proper admonishment to defense counsel which was consistent with that provided by counsel's personal physician; and that counsel's condition was the cause for the first two continuances of the trial.

However, with such knowledge and understanding by and between the parties to this trial, we must consider that both the trial judge and the defense counsel have certain duties and responsibilities to perform. Some are specified by the canons of judicial and professional ethics, while some are provided by law. Failure to perform those duties on the part of either party hampers the trial proceedings. Consequently, it must also be determined in this case, whether or not either party failed in that respect.

We consider first, defendant's proposition one, which contends: that he was denied due process of law because he was forced to trial, convicted and subsequent thereto, the trial court denied his motion for new trial; all of which constittued reversible error. For the Court to provide an answer to the proposition we must look to the record before the Court. We observe also, that defendant attached, as an exhibit, to his brief the transcript of defendant's preliminary hearing. However, insofar as the transcript is not presented as a part of the casemade the Court is not bound to consider the same. But notwithstanding that fact, we have reviewed that transcript also.

Proceeding further with defendant's first proposition, we consider defendant's effort to further postpone his trial, by his *third motion for continuance* because of counsel's illness, and the trial court's action in denying that motion. Clearly the question is one concerning whether or not the trial judge abused his discretion in denying the motion. It is defendant's position that since he filed the motion for continuance, it was error for the court to deny it, because it was premised upon counsel's illness. In substance at least, it appears from the record to have been counsel's position that insofar as he had been hired to defend the accused man, and had conducted the investigation of the facts, that he was the only attorney capable of representing this defendant.

We observe the crime was committed December 25, 1966; defendant had a preliminary hearing on January 5, 1967, and was bound over to stand trial in the district court, on the charge of murder.

The case was set down for trial for May 17, 1967, during the next term of court after the crime was committed. A few days before the date set for trial defendant filed his first motion for continuance based upon his counsel's condition of health. Attached to the motion was the affidavit of Dr. Clark, counsel's personal physician. The affidavit stated that counsel would not be able to engage in a "controversial trial or a contested case" for a period of approximately thirty days. The affidavit set forth that counsel was suffering from "ulcers." The affidavit seemed quite sufficient, so the case was stricken from the docket. The case was subsequently set for trial for September 20th, which was in the second term of court after the initial complaint was filed.

On September 18th, two days before the trial was to commence, defense counsel filed a second motion for continuance which was also supported by the affidavit of his personal physician. The trial judge conducted a hearing on the second motion at which the doctor testified concerning counsel's "ulcers." Defense counsel also testified and was subjected to cross-examination. However, at the conclusion of that hearing, the trial judge reserved his ruling on defendant's motion until that afternoon. The judge required that defendant be present with his counsel when he made the ruling on defendant's motion. [Another defendant represented by the attorney in another capital case was also required to be present. See: Crumb v. State, Okl.Cr.App., 458 P.2d 909.] On the afternoon of September 18, defendant and his counsel were both present. The trial judge advised all parties of the Court's position in the matter, and before sustaining defendant's motion for continuance stated, in part at pages 131 and 132 of the casemade, as follows:

THE COURT: Let the record show present at this time, Mr. E. K. Bearden and Mr. Ernest Crumb, are present in court, with their attorney, Mr. J. B. Champion. And I would advise them, the reason they were requested to be here was not for the purpose of trying them, or anything of the kind, but because the court was not willing to make a ruling, a definite ruling in their cases without them being present to know what was being done. I am not going to ask you any questions at all. But I do want to advise each of you that your cases were set for trial on the May docket, as I am

sure you are both aware, and that at that time your attorney, Mr. Champion, filed a motion for continuance, with an affidavit by Dr. Frank Clark attached, same, * * * that Mr. Champion had ulcers and it would endanger his life if he were to try a case at that time. That was filed in each of your cases, and I believe in one other case, at that time. * * *

*　*　*　*　*　*

(Continuing on pages 133, – 137).

As a result the cases were set over on to this docket, and this docket was set on August 17th, * * * Mr. Champion has filed another motion for a continuance, which is almost—not exactly, but almost identical with the one filed back in May: that he has ulcers and that it would endanger his life to try the case.[1] We had a hearing on them up here for about an hour or so, and after we heard it I told both counsel that I would not rule on it without you gentlemen present and know what was going on. You are present now, and the court is now getting ready to rule on them. Frankly, and I told Mr. Champion, privately that when this happens on successive times makes me think that this is just a method to try to get out of going to trial. I am not convinced yet that it is not. But frankly, the doctor is here and testified, and quite frankly he testified that he didn't know for sure whether he had one or not, but if he did have that it might be dangerous for him to go ahead and try the case. Frankly, I don't want to take a chance on anybody's life. * * * In any event the court has determined that the motions will be sustained at this time, that the cases will be set over for trial at the earliest opportunity—I wish I could tell you when, but I can't. * * * But I wanted you all to understand what we are doing and why. The cases are being continued at this time. They will be re-set at the ear-

liest opportunity. Now, I can't tell you when that will be. It may be thirty days or it may be sixty. But *I am telling you now, that whenever it is you will be expected to be here ready to go to trial, whether with Mr. Champion or some other lawyer.* * * * And I want you all to understand that the continuance is being granted, but on the condition that this is the last one. There will be no more. And that whenever the court sets it in the future, which may be thirty days or sixty days, and it might not even be until next January, I can't tell at this time. I haven't had a chance to review the docket and see what the possibility was. But whenever it is, you will be expected to be ready to go to trial at that time. If Mr. Champion is not ready then it will be up to you to have you an attorney, whether it be you or somebody else. * * * But what I want you all to understand is that you've gotten your last continuance. Now don't misunderstand me, if one of you is on the way down here for trial and somebody runs over you in a car and nearly breaks your neck and they take you in the hospital, well certainly I am not going to say that I am not going to give you a continuance. But it is going to have to be something along that line, or other reasonable causes—I think you understand what I am trying to say. (Emphasis Added).

MR. CRUMB, the defendant [in another case]: Yes.

MR. BEARDEN: Yes sir.

Subsequent to the foregoing admonition from the trial judge to the defendant and his legal counsel, on October 11th counsel filed an instrument styled: "Renewed Motion to Disqualify Judge Shilling." The motion recites many things which counsel contends is personal dislike for him, and

---

1. The record reveals that at the hearing on the motion for continuance the doctor stated that defense counsel should remain quiet, follow a strict diet, and present himself at the Scott-White Clinic at Temple, Texas, for a complete examination. He testified further, that his diagnosis of defense counsel's ulcers was based upon the patient's past record and what counsel had presently told him, but that he did not make x-rays or take a blood-count.

prejudicial to defendant. In response and on the same day defendant filed his motion, the district attorney filed a Motion to Strike. Both motions were set down for hearing on October 20th.

On October 20th defense counsel filed his *third motion for continuance* setting out, "That counsel for defendant is ill." Attached to the motion was an unverified copy of a report from Radiological Consultants Associated, Garland, Texas, in support of said motion. The judge set the pending motions for hearing at one-thirty P.M. October 23rd.

According to the record, at the appointed time on October 23rd, neither the defendant nor his defense counsel appeared. The court waited until approximately one-fifty six P.M. for defense counsel to make his appearance, when the judge overruled defendant's motion for continuance and motion to disqualify, and sustained the district attorney's motion to strike.

However, the reporter's note in the case-made reflects that at 2:35 P.M. the defendant and defense counsel appeared in open court. The record recites, (C.M. 170): " * * * Court reconvened in open court to again consider the matters in this case, and the defendant, E. K. Bearden was present in person, *and his attorney, J. B. Champion, Jr., was also present, having walked into the courtroom wearing an open-necked short sleeve shirt, and no coat or tie;* * * * *"2* (Emphasis added).

A lengthy hearing was had when defense counsel vigorously argued his motion for continuance, and took the witness stand and testified in support of his motion, based on his condition of health. The district attorney objected to the medical report for the reason that it was not verified. Thereafter the Judge reiterated that the two previous continuances had been granted for the same reason, and he reminded counsel

of the court's previous admonition given to him and the defendant relative to the case going to trial. Defense counsel offered a different version, but when the defendant was asked by the court concerning the matter, the defendant admitted that what the court said was correct.

At that point in the hearing the following took place between the court and defendant: (C.M.–192.)

"THE COURT: Do you have another attorney to represent you?"

MR. BEARDEN: No sir.

THE COURT: Are you in a position to hire another attorney to represent you?

MR. BEARDEN: No sir, I am not.

THE COURT: Have you made any effort to do so?

MR. BEARDEN: Well, your Honor, under the circumstances, not only myself but my family has gone in debt to hire this one. We still don't have that paid off yet, the debt that we have undergone in order to afford this one.

THE COURT: Have you made any effort to secure the services of another attorney to go to trial?

MR. BEARDEN: I don't feel that another attorney—(interrupted)

THE COURT: I didn't ask you how you felt. Have you made any effort?

MR. BEARDEN: No, I haven't. I want to tell you my reason why I haven't.

THE COURT: *Very well, do you desire the court to appoint you one?*

MR. BEARDEN: *No sir.*

THE COURT: Very well, are you ready to go to trial?

MR. BEARDEN: If I can try my own case. Your Honor I am ready to go to trial at any time I can be fairly tried. I

---

2. This action became the basis for one of defense counsel's citations for contempt of court, as his attire was in violation of the standing Rules of the Court.

feel like if I am given a fair trial they will set me free. (Emphasis added).

Shortly thereafter—during the same hearing—defense counsel announced to the court, (C.M.–198)

"MR. CHAMPION: * * * *I will be here with these boys, but I am not going to stand and defend them. And I am going to instruct them to stand mute,* because I am not able to* defend them.* * * * These are not strong cases, as the county—district attorney well knows."

THE COURT: That's the one point on which I agree with you, Mr. Champion. (Emphasis added).

Near the conclusion of the hearing the Judge advised all parties, by saying, "The defendant, E. K. Bearden, is instructed to be present Wednesday morning at 9:00 o'clock ready to proceed to trial." When the judge concluded, defense counsel stated: "It will be through very early. There won't be a question asked by me, or E. K. won't take the stand." Subsequently, the defendant stood trial commencing October 25, 1967, with defense counsel of his own choice being present, contending he was too ill to properly act as defense counsel.

When the case was called for trial, the State announced ready, but defense counsel refused to make any such announcement. When the docket was completed, defense counsel demanded that his latest motion for continuance be considered. The district attorney entered his demurrer to defendant's motion for continuance, and the court commenced to hear argument on the district attorney's demurrer.

The record reveals, commencing at page 124 and continuing to page 230, that approximately fifteen pages is devoted to defense counsel's argument concerning his condition of health and what transpired. During the whole period, the court continued to insist that the argument was concerning the district attorney's demurrer to the motion for continuance. Finally, at the conclusion of the argument the de-

murrer was sustained, and the judge again admonished defendant personally, that due to the previous announcements of his defense counsel *the court would appoint counsel to represent him if he desired to accept such offer. For the second time defendant refused* the trial court's offer to appoint counsel for him. Thereafter, considerable other argument occurred before the jury was called for voir dire.

Defense counsel refused to participate in the selection of the jury; but notwithstanding, the district attorney challenged several prospective jurors because they indicated they had already formed an opinion concerning defendant's case.

At the conclusion of the voir dire, the State proceeded to present its witnesses. However, defense counsel refused to even attempt to cross-examine the state's witnesses. The second witness called by the State, Mrs. Hazel Wagoner, was not present even though the State issued a subpoena for her to testify. Mrs. Wagoner is the divorced wife of the man whom defendant was charged with having killed; and she was one of the witnesses present when the shooting occurred.

On the second day of trial, the State again called for Mrs. Hazel Wagoner to testify, but for the second time she was not present in court. The State then placed Mr. Wayne Warthen, criminal investigator in the district attorney's office, on the stand to testify. Mr. Warthen testified that about six twenty-six P.M. the previous night, after court had recessed, he observed the defendant and Mrs. Wagoner together. When the defendant attempted to personally ask a question of the witness, the district attorney objected to defendant's acting as his own counsel, with retained counsel being present. The court sustained the objection, but defendant insisted that his question should be answered. Excerpts of the record thereafter are as follows:

THE COURT: Mr. Champion?

MR. CHAMPION: I will state this to your Honor, the prosecution has got a

book there of information taken in the preliminary hearing of this case. The side he has presented to this jury—

MR. MORDY: I am going to object to a speech now, your Honor.

MR. CHAMPION: Well, I don't care whether you object or not, but you presented a side—

MR. MORDY: Objection has been sustained, Mr. Champion.

MR. CHAMPION: Oh, I am sure it has.

THE COURT: Mr. Champion, you are entitled to ask the question in behalf of your client, and apparently your client desires the question to be asked. Do you care to ask the question of this witness, or not?

MR. CHAMPION: I told this Court yesterday that I didn't feel—

THE COURT: I didn't ask you what you had told me, I asked you if you cared to ask a question of this witness or not?

MR. CHAMPION: I am not going to take the life of a defendant in my hands when I am not able to represent him and when I am sick.

THE COURT: Would you answer my question, do you desire—

MR. CHAMPION: I've answered it all I am going to, your Honor.

MR. BEARDEN, the defendant: Mr. Mordy, the public defender, doesn't care for the truth—

(REPORTER'S NOTE: The jury retired to the jury room out of the hearing of the proceedings in the courtroom and thereupon the following proceedings were had in the courtroom out of the presence of the jury, to-wit:)

THE COURT: Ask Mr. Mordy to come back here (speaking to bailiff).

THE COURT: (After return of Mr. Mordy to the courtroom.) I just excused the jury, Mr. Mordy. I have some things I desire to settle at this time. Now, Mr. Bearden, when we started the trial of this case, in fact several days before and again before we started it, the Court advised you of your rights to an attorney; your attorney advised you that he was not able, and you insisted that he appear and be your attorney, apparently, and he has insisted that he is your attorney, and is appearing. Now, as long as you have an attorney sitting there, under the rules of the court he is the one that is supposed to ask the questions and make the objections, and things of that kind. I think that it has become apparent to you that he has not.

MR. BEARDEN, the defendant: Sir, I am sorry, your Honor, for anything I've done. I have realized all that. I am fully aware of it. But, human nature, when I get shot at, or when I get kicked, I hit right back and just as fast. And I can't help that. It is something inherited in me. And I try not to. I do my best not to. And I am sorry for it. I apologize to the Court, and I apologize to anybody else for it. It is vengeance of mine. But, uh, I can't help mine. And when somebody shoots at me, or somebody kicks me, I always manage to shoot back or fight back, or kick back, whatever—whatever is necessary to—and I can't help that.

THE COURT: Well, as long as you are in this court, you are going to conduct yourself properly, and so is your attorney.

MR. BEARDEN, the defendant: I am going to try my best, YOUR Honor.

THE COURT: Now, your attorney says the he is not able. I am inclined to agree with that. However, it is strange to me that he is able to get up and make a speech attacking the court and district attorney ever so often, but is not able to answer a simple question about whether he has an objection or not, or a question which you apparently want to ask the witness.

MR. BEARDEN: I've seen movies of men on the battlefield, that were sick, would get up—would try to get up and fight, even after they was down.

THE COURT: Well, that has nothing to do with the proceedings here. We are going to try this case as best we can, and it was your and Mr. Champion's election that you proceed with him sitting there.

MR. CHAMPION: Not our election. We presented motions to you, that in all good conscience, if you had desired this boy to be fairly protected, you would have granted him the time.

THE COURT: I have made every effort to do that, and have offered to grant him time.

MR. CHAMPION: Well, in the first instance, when Mr. Mordy came in here—Mr. Cook, I don't recall which—I believe it was Mr. Cook. He said: "Oh," he said, "where are the X-ray or radiology reports?" And he berated the Doctor. He berated me. Well, I've had two X-rays, I've had four hemorrhages, and I am not able to try it, and there is no time in God's world that is as important as seeing that a man gets a fair trial. You put him on a schedule, why I've explained to you that no other lawyer could get this stuff, you appoint him a court appointed attorney, give him some time. What does he get? $250.00 from you on a case no telling what the specialists get. Got people in Oklahoma City, things like that. Now, that's not fairness.

THE COURT: I am not interested in your opinion on the subject, Mr. Champion. 1 am pointing out that the election is yours and your client's. *Even at this point, I would declare a mistrial and appoint an attorney to represent the defendant, if he requests it.* (Pause.) But if you insist on appearing and going ahead as the lawyer in the case, you are going to conduct yourself properly, and so is the defendant. (Emphasis added).

MR. CHAMPION: I am going to stand by this boy as long as his mother and E. K. wants me to stay.

MR. MORDY: Let's proceed, your Honor.

THE COURT: Are you ready to proceed, Mr. Bearden? You understand what I have said?

MR. BEARDEN: Yes sir, your Honor. I apologize, and I will do my best, to conduct myself properly.

THE COURT: You understand that you do have the right to ask questions, and cross examine witnesses, and make objections, but as long as you've got an attorney present, he is the one that is supposed to do it.

MR. CHAMPION: This attorney has advised you, that in all conscience I could not conduct a good cross examination.

THE COURT: Mr. Champion, if that is true then in good conscience you ought to resign and give your client's money back, and withdraw from the case.

MR. CHAMPION: Your Honor, I made that same offer to you and counsel yesterday. I said, "Let him have some time, if I am not ready within a reasonable time, to allow me to get well—don't tell me that's not true. And what you said to me, and I told them that I would reimburse him for what he had paid, because I want fairness for him. I do not want him railroaded on a one car track.

THE COURT: You said you would do so sometime in the future, if you decided in the future that you were not able, and that's not—good enough.

MR. CHAMPION: I told you a definite date. I told you when my next X-ray was. I would advance the date. Anything to see that he gets a fair trial. Judge, I would like to ask your Honor, do you think that E. K. has had a fair trial?

THE COURT: *The only thing that has interfered with his having a fair trial, Mr. Champion, if he has not, has been yourself.* (Emphasis added)[3]

*   *   *   *   *   *

THE COURT: In all fairness to the defendant, are you ready to proceed under the present circumstances, Mr. Bearden?

3.  C.M. 348-353.

MR. BEARDEN: Yes sir. I will try to conduct myself properly.

THE COURT: *Well is it your desire to continue with Mr. Champion as your counsel throughout this trial?*

MR. BEARDEN: *Yes sir.* (Emphasis added).

THE COURT: Very well. Call the jurors back in.[4]

Thereafter the trial continued and the State rested its case. When the court asked defense counsel if he desired to put on any defense, counsel continued to stand on his illness and refused to call any witnesses or to make any defense whatsoever. Subsequently the court recessed to prepare the instructions for the jury. After they were prepared defendant offered no objections to the court's instructions, and requested no special instructions to be given. Immediately after the instructions were read to the jury defense counsel read into the record his demurrer to the evidence. The prosecutor made his closing argument to the jury, but defense counsel declined the opportunity to make any statement for the benefit of the jury. The jury returned a verdict finding defendant guilty of manslaughter in the first degree and assessed his punishment at fifteen years imprisonment.

We have considered the record in this case very carefully for the reason that the substance of defendant's contentions are that he did not receive due process of law. After considering all things contained in the record we reach the same conclusion stated by the trial judge, when he informed defense counsel, "The only thing that has interfered with his [defendant's] having a fair trial, Mr. Champion, *if he has not,* has been yourself."

■ In substance, defendant's first proposition contends the lack of due process of law only because the prosecutor allegedly failed to present facts favorable to defendant. From the record before the Court it is most apparent that the prosecutor subpoenaed the principal witness, but she did not appear. And it is also apparent that defendant and defense counsel both knew where and how to obtain her presence, but did not do so. The defense counsel has a duty to present facts favorable to his client, which counsel did not do in this case. At this stage of the proceedings, it is too late to claim "foul," when the infractions were committed by defendant himself— through nonfeasance by legal counsel of his own choice.

Likewise, defendant's second proposition is based upon the same premises and is without merit.

The third proposition contends prejudice of the trial judge which resulted in the court forcing the trial through to a conclusion, whereby the trial court committed reversible error. As we view the record, the trial judge was merely performing his judicial duty to afford defendant a trial, according to law. There might be some merit to this contention were it not for the fact that on at least three separate occasions the judge offered to appoint counsel for defendant, but he chose to refuse each offer made by the court. This Court's consideration is confined to the record before the Court, and it is apparent that this complaint is based purely upon defense counsel's personal beliefs. Even if such were true, it would not have justified the position taken by counsel, that of making no defense whatsoever. Defense counsel's contention of stomach ulcers and the trial court's insistence that the trial proceed is not sufficient to prove such alleged prejudice. Like any other contention of error, proof must appear in the record. We observe from the record also, that at no time did defense counsel take advantage of the admonitions given him by both the trial judge, and counsel's personal physician. There is nothing in the record to show that counsel sought hospitalization for his condition of illness. We

4. C.M. 355.

might add, that had he done so he would be in a much better position than the record presently reflects him to be in.[5]

■ We feel constrained to accept the authority cited in the State's brief concerning illness of defense counsel. In Mixon v. Georgia, (1890) 85 Ga. 455, 11 S.E. 874, the Supreme Court of Georgia sustained the trial court's action in denying further continuance of trial, after defendant had been put on notice that he must procure other counsel if his present counsel continued to be ill, when the time for trial arrived. In that case, as in the instant case, defendant had been granted several previous continuances on the premises of counsel's illness. Consequently, we must conclude that the trial judge did not abuse his authority when he denied defendant's last motion for continuance in this case.

■ We must state further, that the record reveals that the trial court made every effort possible to assure that this defendant received a fair trial and due process of law; and we believe that he did. As recited hereinbefore, even at the time for defendant to put on his defense—immediately prior to the time the State rested its case—the court offered to declare a mistrial and appoint counsel for defendant in order that the witnesses might, at least, be cross-examined; but defendant refused the court's offer. Under circumstances as in this case, we know of no authority which assigns the responsibility to the trial court to insist—let alone demand —that a defendant accept its offer of appointment of counsel. This is especially so, when the defendant is reasonably intelligent, experienced in the criminal process of

law, and knowingly refuses the court's offer, as defendant did in this case.

We are aware that the practice of law is an arduous profession and sometimes gruelling, and especially in a criminal trial when the charge is murder. While our sympathy goes out to any lawyer whose health cripples his professional activities, we are of the view that counsel in this instance did not sufficiently discharge his professional responsibility to his client notwithstanding his condition of health. Illness may constitute a reason why a lawyer fails to expedite his business, but his professional responsibility to his client may, in some instances, far outweigh any consideration of the attorney's health. But for the facts: that both defense counsel and his client [defendant herein] were well aware of the attorney's physical condition; that the trial court had granted several continuances because of the attorney's condition of health; that both the defense counsel and the defendant were put on notice that the case would be tried the next time it was placed on the court docket; that even during the trial the court offered to declare a mistrial and appoint counsel for defendant; and that with full knowledge of the situation, the possible results and consequences defendant personally refused the trial court's offer to appoint counsel to effectively represent him; but for these facts, we would be compelled to take a different view of this case. However, considering the totality of the circumstances we can see no justifying reason to warrant the reversal of this case.

■ The evidence presented the jury was clearly sufficient to sustain the verdict of

5. Defense counsel made several ex parte appearances in this Court, when he explained how he was required to leave the courtroom to attend the men's room to vomit; that when he did, he vomited blood. But, counsel also related that he had vomited blood on numerous occasions prior to the time of trial. Consequently, there is little doubt that both he and his client were most aware of his condition. Since the judge put them both on notice,

it was incumbent upon them to make proper arrangements for defendant's trial, but neither of them seemed to consider the situation serious. It is important to note also, that each time counsel made his ex parte appearance the only assurance he received was that this Court would review the record to determine whether or not the defendant received due process of law.

first degree manslaughter.[6] And we are of the opinion that the defendant received a fair trial and due process of law, even though under adverse circumstances. We find further, that such adverse circumstances were of the making of the defendant and defense counsel of his own choice, trial court.

6. The facts presented to the jury revealed that the defendant was at the home of Mrs. Hazel Wagoner, in violation of a district court order; that he fired a shotgun at James Madison Wagoner, Jr. which caused the death of said person; and that the said Wagoner fired several shots into the house from a carbine rifle. The State did not presume to offer any defense for the defendant, nor did the

After having carefully considered the record and briefs submitted in this case, we are of the opinion that the judgment and sentence of the District Court of Carter County in this case should be, and the same is therefore, affirmed.

Judgment and sentence affirmed.

BUSSEY and NIX, JJ., concur.

State attempt to withhold any evidence.

Any defense to be offered to prove an act of homicide to have been either excusable or justifiable, under Title 21 O.S.A. §§ 731 and 733, is a matter for the defendant to present. It is not sufficient for defense counsel to "lay behind a log" and do nothing, expecting the prosecution to explain the defendant's actions.