[Crim. No. 8792.   Second Dist., Div. Three.   Jan. 14, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. HERBERT
RAINEY, Defendant and Appellant.

Elinor Chandler for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Sue May West and Herbert Rainey were jointly accused of perjury (count I), conspiracy to commit perjury (count II), and conspiracy to falsely report a crime in violation of section 148.5 of the Penal Code (count III).

Rainey was accused of subornation of perjury (count IV), and both defendants were charged with conspiracy to commit false imprisonment in violation of sections 182 and 236 of the Penal Code (count V). Rainey was accused of having suffered a prior conviction of robbery, which he admitted. Both were convicted upon all counts of the information. Rainey, hereinafter referred to as defendant, appeals from the judgment and notices an appeal from a nonappealable order denying his motion for a new trial.

■ The grounds of appeal which are urged will be taken up in order. The first point, and the one that seems to be most strongly urged, is that upon the first day of the trial the court suggested that in future sessions the attorneys in the case appear ''hatless,'' remarking at the time that his request would apply to Mrs. Elinor Chandler, who was attorney for Rainey. The court's request, made in the presence of the jury, is assigned as misconduct which, it is contended, in some manner operated to the prejudice of the defendant. The incidents occurred on the first and second days of the trial and the report of the same is set forth in the footnote.[1]

---

[1] ''THE COURT: I have one further matter that I request, and I am going to address my remarks to all of the attorneys, but by—because of its very nature, of course, it is—actually would be applicable only to Miss Chandler. I would request that throughout the trial after today that the attorneys who appear in my courtroom do so hatless. The reason that I make this request is that I believe that hats can be distracting to jurors, and I don't want anything to distract from the main issues here in this trial, so if Miss Chandler does appear in the future without a hat, she will understand that she is doing so out of—because I have requested her to do so. MRS. CHANDLER: May I approach the bench, your Honor, because I will have some statements to make, and I might as well make them right now, because I believe this should go on record, and I believe I can point out authorities to the Court on this? In other words, if we are going to argue this matter, we might as well go right from here, rather than waste this jury's time and my client's time. THE COURT: We are not going to argue anything. I have not ordered you to do anything; I am merely making a request. If you do not wish to comply with my request I am not going to order you to do so, Mrs. Chandler. I am asking you to do it. If you choose not to, that's up to you. MRS. CHANDLER: Your Honor, I believe that's unfair to the Defendant. If he is going to be jeopardized — MR. FAGAN: If we are going to have an argument, I would prefer to have it outside the presence of the jury. THE COURT: All right. I agree with counsel. Of course, anything that I say in regards to this matter I don't want you to take against any of the clients involved. That has nothing to do with any Defendant; has to do with the counsel involved. I don't think it would be necessary to take it up any further. I believe that that will end the matter. MRS. CHANDLER: Your Honor, I will

The matter was referred to in the hearing of defendant's motion for a new trial. Mrs. Chandler made statements, which were not controverted, describing some of the reactions of the jury, which she construed as indicating prejudice against Rainey. In the course of her argument, she asserted that as she arose to address the jury one of the women jurors turned completely away and during an hour of argument never once looked at her, and that several of the other jurors were noticed "sliding away their eyes" and refusing to look at her, all of which she attributed to the fact that the court had criticized her hat.

The contention could be disposed of upon the ground of lack of prejudice to defendant. It was Mrs. Chandler's idea to wear a controversial hat. Defendant had no say in the matter, and could not be blamed for the incident. But we do not believe we should leave unanswered the charge that the judge was guilty of misconduct.

---

make a motion for a mistrial. THE COURT: That motion will be denied.''

At the opening of the session next morning, after the trial was in progress, the following occurred: ''THE COURT: I notice that Miss Chandler did not comply with my request that she come into court hatless. However, I might state for the record that, of course, I am not going to hold that against her client, and it may—obviously it displeases, but whether it pleases or displeases the jury, I wish to admonish you that you are not to take that into consideration in any way in determining the guilt or innocence of her defendant, or either defendant. It's a matter between Miss Chandler and myself and will be handled separately, apart from this trial. MRS. CHANDLER: Your Honor, may I voir dire the jury on that question if the Court is going to bring it up? I think it is highly improper. THE COURT: You may not. MRS. CHANDLER: Well, may the record show I believe these remarks directed to counsel are highly prejudicial to his client and it is for the court and counsel's benefit only, and I ask the Court to direct such remarks personally, not in any other way. THE COURT: You placed me in a position where I had to direct remarks to the jury because you are obviously doing exactly what I requested you not to do, and the record will note you not only appeared with a hat, but with a different one, and one, in my opinion, simply designed to attract attention to yourself, in my opinion, improper and inappropriate for a court proceeding. MRS. CHANDLER: At this time may the record show—

MR. FAGAN: Well may we approach the bench if there is going to be further argument on this? MRS. CHANDLER: There will be a further motion for a mistrial. THE COURT: There will be no further argument.''

Upon the argument of the appeal, Mrs. Chandler stated that she wore a hat throughout the trial. It is to be noted that hat number 2 was no less obnoxious to the court than hat number 1. (Neither hat has been brought up as an exhibit and we accept as a fact that the hats were as shocking to the judge as his remarks indicated.)

Mrs. Chandler was, and still is, asserting a right of women lawyers to wear hats of whatever size and style they choose, free from any control by the court. The question that is forced upon us is not merely whether women lawyers should be permitted to wear hats in the courtroom; it is whether the judge or a lawyer in the case is to dictate in matters of courtroom decorum and behavior which bears upon the orderly conduct of the proceedings, and especially those which might distract the minds of the jurors from the solemn duty they have to perform. It is whether the lawyer may dispute the authority of the court by refusing to comply with the judge's reasonable and proper requests. Needless to say, the present case falls clearly within the rule that it is the duty of every lawyer to be respectful toward the court. Speaking generally, we would not deny that at times some judges may go too far in the manner in which they exert control over the conduct of counsel, but, with rare exceptions, lawyers understand that such occurrences are among the minor difficulties of the practice of law and refrain from acts of disrespect or disobedience. We do not suggest that attorneys should supinely submit to the directions of a judge which they consider to be an infringement of their rights or those of their clients, but when they fail to comply with a simple request of the judge, as was done in the present case, it is incumbent upon them to demonstrate that they were acting respectfully and in defense of a clear and important right.

There is no law or rule of court on the subject of women's hats and it is, therefore, a matter that rests within the discretion of the individual judge. We have no inclination to interfere with the exercise of that discretion. The judge's request was reasonable and no excuse has been offered for ignoring it.

A woman's hat, when worn indoors, serves no utilitarian purpose and its virtue as a protection against the elements went out with the sunbonnet. It is purely an article of adornment, worn to attract attention, to enhance the appearance of the wearer and earn admiration. However, the artistic creation that would add to the beauty of a garden party would be, in most cases, entirely out of place in a courtroom.

Parading a freakish hat before a jury could only be characterized as pure exhibitionism; and courtroom exhibitionism indulged in by either men or women lawyers is a type of aberration which merits only disapproval.

If Mrs. Chandler had merely felt ill at ease without a hat she could have appeared on the second day with a modest one that would not have been subject to the court's criticism. Instead, she not only chose to defy the court, but in the presence of the jury called the court's request "highly improper" and "highly prejudicial" and moved for a mistrial. In contrast with the court's courteous treatment of the matter, the conduct of Mrs. Chandler was ill advised and disrespectful. There is no merit whatever in the claim that the judge's request was improper or that his remarks about the hats were prejudicial. The contention is frivolous and we gladly leave the subject and pass to the other grounds of appeal.

The following is a brief statement of the facts which led to the prosecution of Rainey and Mrs. West. Herbert and Wanda Rainey were husband and wife, but were separated. Herbert had a claim arising out of an accident and was expecting a settlement of between $1,000 and $6,000. He wished his wife to be out of the way when a settlement was made. He conceived a plan to cause her arrest and prosecution for possession of marijuana; he gave a marijuana cigarette to Sue West, a family friend, and the two agreed that Mrs. West would turn over the cigarette to the sheriff and report that she had received it from Wanda, and that she probably had more marijuana in her car. This was done. Michael Cervanyk is the son of Mrs. West. Rainey gave him a marijuana cigarette and asked him to put it in Wanda's car. Michael placed it in a jar, wrapped a rag around it and placed it under the passenger's seat in the car, as Rainey had requested. Wanda was arrested, her car was searched, the jar with the cigarette was found. Wanda was accused of possession, her preliminary examination was held and she was bound over. Before the preliminary was held Rainey directed and prevailed upon Sue West to testify to the facts that she had related to the police, and she did testify to those facts.

Chester Wilson testified that he was a friend of the Raineys and Mrs. West. Shortly before the arrest of Wanda, Rainey said to him (Wilson) and Mrs. West that he wanted his wife out of the way for 30 to 90 days and that he would pay $50 to any one who would plant marijuana upon Wanda's person. The following day, in the presence of Wilson, Rainey told Mrs. West that if she would plant a marijuana cigarette in Wanda's car and go to the sheriff with another one and claim it had been received from Wanda, she

would be taken care of. Rainey gave Mrs. West a marijuana cigarette and she put it in her pocketbook. Soon thereafter Rainey, Mrs. West and Wilson went to a bar; Wanda was present, seated some distance away. Rainey ordered a drink for her but Wanda had the bartender pour it out. Rainey said this made him mad and he was "going to go ahead and go through with this thing." Rainey left in an automobile and was gone 30 or 45 minutes; when he returned he said "This thing has been done," or words to that effect. Mrs. West left and was gone a half an hour or 45 minutes and when she came back said she had gone to the sheriff's office. Shortly thereafter Wilson witnessed the searching of Wanda's automobile and her arrest. Two days prior to Wanda's preliminary examination Wilson went with Mrs. West and Mrs. West's son to Rainey's house; the preliminary hearing was discussed; Mrs. West had received a subpoena; Rainey was questioned what to do about the subpoena and he said "Don't do anything except what you have already told the sheriff's department."

In the present trial Mrs. West testified that Rainey persuaded her that Wanda was using marijuana and wished to get her off it. He gave her (Mrs. West) a marijuana cigarette, requested that she give it to the sheriff's office and represent she had received it from Wanda. She did as requested. She did not realize the seriousness of what she was doing but thought she was helping Wanda. Wanda testified that she had never had possession of the cigarette Mrs. West gave to the officer, and although she saw the jar and the cigarette recovered from her car, she had no previous knowledge that they were in the car.

Michael testified that he was given a marijuana cigarette by Rainey and placed it in a jar in Wanda's car; that he was with his mother when she gave another cigarette to a deputy sheriff; she told the deputy she had received it from Wanda and that there was probably more marijuana under a seat in Wanda's car.

It is contended that the only evidence against Rainey was the testimony of Wilson and Michael, that they were co-conspirators with Rainey and Mrs. West and that their testimony was not corroborated by any other evidence. For this reason it is argued that there was insufficient evidence to support the verdicts and it appears to be argued that there was insufficient evidence to establish the corpus delicti of any of the offenses. These contentions are untenable. There was

no evidence that Wilson participated in any way in the plans of Rainey and Mrs. West for Mrs. West to take a cigarette to the sheriff's office and state she had received it from Wanda, nor in the plan of Rainey and Michael to plant a cigarette in Wanda's car. Wilson was merely a bystander who overheard the arrangements that were made between Rainey and Mrs. West and also the statements of Rainey that he proposed to go through with the plan, immediately before Michael placed the cigarette in the car. Wilson also testified to having overheard Rainey advise Mrs. West to testify at the preliminary to the facts which she had stated to the officers. His testimony was sufficient to corroborate that of Mrs. West upon the conspiracy charge to cause the arrest of Wanda, and for Mrs. West to give false testimony at the preliminary. The testimony of Wilson and that of Wanda, with the testimony of Mrs. West, herself, was sufficient to prove that Mrs. West testified falsely at the preliminary.

The next point is that after Rainey had admitted on cross-examination the conviction of a prior felony, robbery, he was asked by his attorney whether he had pleaded guilty knowing that he would go to prison; there was an objection to the question, which the court sustained. Error is assigned. It is contended that the fact sought to be proved would have tended to offset Rainey's impeachment due to the prior conviction. The objection was properly sustained. The evidence would have served no purpose whatever.

The next assignment of error concerns the court's statement that one of Mrs. Chandler's questions was ''tricky.'' Because of the statement a motion for mistrial was made and promptly denied. There is no merit in this point. When Michael was under cross-examination he was asked whether he was interested in helping his mother and replied that he was. He was then questioned ''My question is, you would do anything you could to help your mother?'' and the boy answered ''I am not lying,'' which answer was stricken. The boy appeared to be confused by the question and the court said: ''Well, the question is ambiguous and sort of—sort of a tricky question.'' The question invited the court's criticism and the court's remark furnished no ground whatever for the motion for a mistrial or a claim of error.

The next point is that the attorney for Mrs. West in cross-examining the young daughter of Rainey asked whether she had not run away from home at 4 o'clock in the morning. The witness answered ''Yes,'' but upon the objection of

Rainey's attorney the answer was stricken, the court stating that the question was immaterial, that the jury should disregard it. Another motion was made for a mistrial and denied. It is argued that the question was asked in bad faith and to discredit Rainey. The triviality of this point is self-evident.

The next point is that the court read to the jury the information, including the allegations of the overt acts alleged, and that this would have been understood by the jury as advising them that the defendants in fact committed those acts and that "this manner of instructing was not only ambiguous, burdening, but frankly misleading." Obviously, the point is without merit. Reading of the information was entirely proper.

The Attorney General calls attention to a further point that is not mentioned in appellant's brief, namely, whether Rainey has been subjected to double punishment in violation of section 654 of the Penal Code. Under this section action which is made punishable in different ways under different provisions of the code may be punished under either provision but not under both. As we shall see, the actions of Rainey which constituted the offense of conspiracy to commit perjury were inseparable from those which constituted the substantive offenses. Rainey was sentenced on all five counts, the sentences to run concurrently with each other. The punishment imposed is excessive.

Rainey and Mrs. West were properly convicted of conspiracy to commit perjury. Mrs. West was guilty of perjury, an offense separate and distinct from the conspiracy. The agreement that false testimony would be given constituted the offense of conspiracy and would have been punishable even if no false testimony had been given.

The entirety of the conspiracy to commit perjury was that Rainey counseled and prevailed upon Mrs. West to agree to give false testimony. Evidence of this fact implicated Rainey in the offense of perjury, and his conviction of that offense rested upon the fact that he aided and abetted Mrs. West in giving the false testimony. Although evidence of Rainey's activities subjected him to punishment either as a conspirator or as a principal in the offense of perjury, he could not be punished for the two offenses. Therefore, he should not have been sentenced upon the perjury count.

For the same reason Rainey was improperly sentenced upon count IV, subornation of perjury. Since he was sen-

tenced for conspiracy he could not be sentenced again for subornation of perjury, since both offenses consisted solely of his prevailing upon Mrs. West to give false testimony.

The conspiracy to give false testimony (count II) was an agreement that Mrs. West would falsely accuse Wanda of the commission of crimes and that she would testify that she had received a marijuana cigarette from Wanda and that there was probably more marijuana in Wanda's car. It was a conspiracy to give a false report of the commission of a crime (count III) and a conspiracy to cause the false imprisonment of Wanda (count V). The overt acts which tended to prove conspiracy to commit perjury were essentially the same as those relied upon to prove conspiracy as charged in counts III and V. The object of the conspiracy to commit perjury was to accomplish exactly what was accomplished, namely, the arrest and imprisonment of Wanda, and it, of course, encompassed the making of the false report and the consequent arrest of Wanda. The Attorney General is of the opinion that Rainey should not have been sentenced under counts III and V. We not only agree but, as previously stated, have concluded that he should not have been sentenced under count IV. These conclusions rest upon the authority of Penal Code, section 654, *Neal* v. *State of California*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], *People* v. *McFarland*, 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449], *People* v. *Keller*, 212 Cal.App.2d 210 [27 Cal.Rptr. 805], and *People* v. *Finch*, 216 Cal.App.2d 444 [30 Cal.Rptr. 901]. There is no need for repetition of the reasoning of the courts in these cases.

Although Sue May West has not appealed and the record does not reveal the disposition of the charges against her, we should mention that she should have any benefit that might accrue to her by reason of the modification of the judgment as to Rainey.

The judgment is affirmed as to count II, conspiracy to commit perjury, and reversed insofar as it imposes punishment for the offenses of perjury (count I), conspiracy to falsely report a crime in violation of section 148.5 of the Penal Code (count III), subornation of perjury (count IV) and conspiracy to commit false imprisonment in violation of sections 182 and 236 of the Penal Code (count V). The purported appeal from the order denying motion for new trial is dismissed.

Ford, J., and Files, J., concurred.