309 So.2d 17 (1975)
Ray SANDSTROM, Appellant,
v.
STATE of Florida, Appellee.
No. 74-323.
District Court of Appeal of Florida, Fourth District.
February 28, 1975.
Rehearing Denied March 26, 1975.
*19 Ray Sandstrom, Sandstrom & Hodge, Fort Lauderdale, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Stephen R. Koons, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
Appellant, a practicing member of the Florida Bar, seeks review of a judgment finding him in contempt and sentencing him to confinement in the county jail for a period of three days.
On February 6, 1974, while representing a client, appellant appeared in open court before The Honorable Robert W. Tyson, Jr., Circuit Judge, without a necktie. The judge there upon admonished appellant that, unless they had some excuse for not doing so, all attorneys should wear a tie when appearing in court and he ordered appellant thereafter to wear a tie in court. Appellant responded: "No, sir. I am saying right now I shall not. I shall dress my mode of dress, not the dictations of the Court."
On March 12, 1974, appellant appeared once again in open court before the same judge, representing two defendants in a criminal case. He wore a white suit, a sport shirt open at the neck, and a necklace with a round gold pendant the size of a silver dollar "with the hair on his chest showing through the open shirt." Upon convening court the judge called appellant's attention to his order of February 6, 1974, and advised appellant that he was in violation thereof. After lecturing appellant on the necessity of cooperation by counsel and of decorum in the courtroom, Judge Tyson advised appellant once again that he must wear a tie in the courtroom, and that until he decided to comply with the order that he was to wear a tie, he was barred from practicing in any proceeding before Judge Tyson. The pending criminal case was then continued for one hour to afford appellant an opportunity to comply with the order relative to court attire for attorneys. The judge warned the appellant that if he returned to court without a tie, he would be held in contempt. Appellant remained intransigent. He dictated a lengthy response into the record and filed a motion to have Judge Tyson disqualify himself. Said motion was denied.
When court reconvened, the criminal case was called and appellant stepped forward to represent his clients. Judge Tyson noted that appellant was dressed exactly as he had been prior to the continuance. After appellant agreed that there was no necessity for the court to reiterate the grounds previously detailed, Judge Tyson found appellant guilty of direct criminal contempt for disobeying his order and sentenced appellant to three days in the county jail. This appeal from the contempt conviction followed.
Appellant filed seventeen assignments of error which have been telescoped into four points on appeal. Appellant's argument may be summarized as follows: (1) failure to wear a tie is not contempt of court; (2) if such failure could be contempt it could only be indirect contempt; (3) the order in question was void because (a) it was not reduced to writing, and (b) its subject matter was beyond the jurisdiction of the court; (4) Judge Tyson's refusal to recuse himself was improper. Only one part of the foregoing argument, (3)(b), warrants discussion and our disposition of that part disposes of the entire case. Before we proceed to that discussion we note that whether an act constitutes contempt is determined by its reasonable tendencies to obstruct justice. Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185, 107 Fla. 858, 143 So. 436. The contemptuous act in the present case was not appellant's failure to wear a tie but, rather, appellant's disobedience of the court's order that he wear a tie. In the absence of the trial court's order, failure to wear a tie would certainly not constitute contempt. However, wilful disobedience of the court order clearly constitutes obstruction of justice *20 and represents a direct rather than an indirect affront to the court's authority.
The following discussion demonstrates that the only question appellant may appropriately raise here is that of jurisdiction. Appellant may obtain reversal of his contempt conviction only if he shows that the order he disobeyed was void, since disobedience of an order issued without jurisdiction is not contempt. State ex rel. Everette v. Petteway, 131 Fla. 516, 179 So. 666 (1938). This limitation upon appellant arises from the following rule:
"Where the court has jurisdiction over the subject matter and the parties and has the authority or power to render the particular order or decree, the fact that such order or decree, violation or disobedience of which is made the basis of the contempt charge, is erroneous or irregular or improvidently rendered, does not justify the defendant in failing to abide by its terms, and his conduct in failing to do so may be punished as for contempt despite the error or irregularity. It is almost unanimously agreed that if the defendant desires to attack the order or decree as erroneous, he must do so, not by disregarding or violating it and then setting the error up as a defense to a charge of contempt, but by attacking the order on direct appeal or by motion to set it aside. He cannot attack it collaterally upon an appeal from the judgment of contempt or upon an application for habeas corpus to be released from imprisonment for contempt. He must obey the order so long as it is in effect and until it is dissolved by the court issuing it, or reversed on appeal by the appellate court." Anno: Contempt  Disobeying Invalid Decree, 12 A.L.R.2d 1059, 1107.
See too, Seaboard Airline Ry. Co., v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529 (1931); State ex rel. Buckner v. Culbreath, 147 Fla. 560, 3 So.2d 380 (1941); Friedman v. Friedman, Fla.App. 1969, 224 So.2d 424; United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); United States v. Dickinson, 465 F.2d 496 (5th Cir.1972). One of the decisions following the general rule has stated it in this fashion: a court order must be obeyed, upon pain of punishment by contempt, until that order is reversed for error by orderly review unless the order is transparently invalid or has only a frivolous pretense to validity. Walker v. City of Birmingham, 388 U.S. 307, 315, 87 S.Ct. 1824, 1829, 18 L.Ed.2d 1210 (1967).
An interesting explanation of the reason underlying the foregoing rule is set forth in United States v. Dickinson:
"The criminal contempt exception requiring compliance with court orders, while invalid non-judicial directives may be disregarded, is not the product of self-protection or arrogance of Judges. Rather it is born of an experience-proved recognition that this rule is essential for the system to work. Judges, after all, are charged with the final responsibility to adjudicate legal disputes. It is the judiciary which is vested with the duty and the power to interpret and apply statutory and constitutional law. Determinations take the form of orders. The problem is unique to the judiciary because of its particular role. Disobedience to a legislative pronouncement in no way interferes with the legislature's ability to discharge its responsibilities (passing laws). The dispute is simply pursued in the judiciary and the legislature is ordinarily free to continue its function unencumbered by any burdens resulting from the disregard of its directives. Similarly, law enforcement is not prevented by failure to convict those who disregard the unconstitutional commands of a policeman.
"On the other hand, the deliberate refusal to obey an order of the court without testing its validity through established processes requires further action by the judiciary, and therefore directly *21 affects the judiciary's ability to discharge its duties and responsibilities. Therefore, `while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory.'" 465 F.2d at 510.
The question we must therefore decide is whether the circuit judge whose order appellant disobeyed had jurisdiction over the subject matter (it being unquestioned that the court had jurisdiction over appellant's person), i.e., whether the judge had the power to impose dress requirements upon lawyers appearing before him in judicial proceedings. We hold that he does have such power.
To begin with, it is clear that the judicial branch of government has the inherent power to regulate the professional conduct of all lawyers. Petition of Florida State Bar Ass'n, Fla. 1949, 40 So.2d 902. Historically lawyers have been subject to court supervised regulation "even in matters so personal as the growth of their beard or the cut of their dress." People ex rel. Karlin v. Culkin, 248 N.Y. 465, 162 N.E. 487, 490, 60 A.L.R. 851 (1928). A recent New York decision, Peck v. Stone, 32 A.D.2d 506, 304 N.Y.S.2d 881 (1969), specifically recognizes the judiciary's power to regulate attorneys' attire in judicial proceedings. The following trilogy of cases also demonstrates recognition of that power: Champion v. State, Okl.Cr.App. 1969, 456 P.2d 571; Crumb v. State, Okl. Cr.App. 1969, 458 P.2d 909; Bearden v. State, Okl.Cr.App. 1969, 458 P.2d 914, 919. See also Dobbs, Contempt of Court, 56 Cornell Law Review 183, 201-204. Since the circuit judge clearly had jurisdiction to enter the order appellant disobeyed, this court must reject appellant's collateral attack upon the order requiring him to wear a tie in court and must affirm his conviction of contempt.
However we think it appropriate to comment upon the various arguments appellant has presented on the propriety of the trial judge's order. Appellant has gone to great lengths to point out that he has appeared in numerous courts, including this one, attired as he had been before Judge Tyson and that no one else had complained. He attempts to glean approval for his dress before Judge Tyson from the lack of express disapproval of such dress by other courts. Appellant also finds comfort in numerous federal decisions striking down dress codes (primarily involving boys' hair styles) promulgated by school boards throughout the country in the last decade. Many of those cases found due process and equal protection rights violated by the codes in question without any sufficient showing of need to justify the codes. See, e.g., Stull v. School Board of Western Beaver Jr.-Sr. H.S., 459 F.2d 339 (3rd Cir.1972); Wick v. Sullivan, 476 F.2d 973 (4th Cir.1973). Appellant also attempts to find some organic right violated by Judge Tyson's requirement that he wear a tie in court. We reject the suggestion and hold that the order in question does not involve the violation of any of appellant's constitutional rights. Certainly by becoming a member of the bar, a lawyer does not terminate his membership in the human race, nor does he surrender constitutional rights possessed by private citizens. Cf. Bond v. Floyd, 385 U.S. 116, 132-133, 87 S.Ct. 339, 348, 17 L.Ed.2d 235 (1966). However "[m]embership in the bar is a privilege burdened with conditions." In re Rouss, 221 N.Y. 81, 116 N.E. 782, 783 (1917). As we indicate earlier, compliance with regulations concerning courtroom attire is one of those conditions. People ex rel. Karlin v. Culkin, supra; Peck v. Stone, supra.
As authority for his position that the contempt conviction is improper, appellant relies heavily upon Peck v. Stone, supra. In that case Ms. Peck, a young lawyer, appeared in the City Court of Syracuse, New *22 York, to represent an indigent defendant. Ms. Peck was attired in a miniskirt, the hemline of which was approximately 5 inches above the knee and substantially higher when she was seated. Having previously admonished her about wearing a miniskirt in the courtroom, the city judge directed Ms. Peck not to appear in court before him again "until her dress is suitable, conventional and appropriate in keeping with her position as an officer of the Court." Being dissatisfied with the foregoing order, Ms. Peck filed a petition in the Supreme Court, Special Term, to vacate it. Upon dismissal of said petition, she appealed to the Supreme Court, Appellate Division, which reversed the order of dismissal and held that the judge of the city court had abused his discretion.
We find a major distinguishing feature between Ms. Peck and appellant. Ms. Peck did not "take the judge on", as the saying goes, and obstinately rebuff his direction to change her attire. The appellate division found that at no time was her attitude contrary to her ethical responsibilities as an officer of the court. Whereas Ms. Peck took her grievance to a higher court for resolution, the way lawyers are trained to do, appellant chose a showdown in open court with the judge and unequivocally apprized him he would not comply with his order.
Finally, appellant cites a recent decision from the Supreme Court of New Hampshire, Kersevich v. Jaffrey District Court, N.H., 330 A.2d 446, opinion filed December 31, 1974, wherein that court reversed a trial court decision holding two defendants in traffic cases in contempt for failing to comply with the court's order to wear coats and ties to court. We would distinguish that case on two grounds. First, the individuals involved there were defendants who were required to appear in court. Second, the parties did not raise the propriety of a collateral attack upon the trial court's order to wear coat and tie. Accordingly, we decline to follow that case and instead rely upon Florida precedents and the general rule quoted from 12 A.L.R.2d supra.
Although when acting officially judges of necessity have inherent power to control the decorum (including the conduct and physical appearance) of counsel, this does not mean that counsel or anyone else can be subjected to the unbridled idiosyncrasies of individual judges. The watchword must be reasonableness. A court's action must bear a reasonable relation to a justifiable end or purpose. We subscribe to the school of thought which holds that the fewer "local" rules the better, and that the power to punish for contempt should be cautiously and sparingly used. Demetree v. State, Fla. 1956, 89 So.2d 498; State v. Clemmons, Fla. 1963, 150 So.2d 231; Geary v. State, Fla.App. 1962, 139 So.2d 891. Judges should refrain from imposing their personal preferences upon others when it is not necessary to the proper administration of justice. There is no place in the courtroom for the personal likes and dislikes of judges such as those demonstrated by the North Carolina judge who upon observing a long haired young man in court inquired: "Now let me get this straight. Do I address you as Miss, Mrs. or Mister?" Dobbs, Contempt of Court, supra, at 201, footnote 70. Thus, a court order pertaining to decorum in the courtroom will be upheld upon direct attack if it is reasonably calculated to promote the orderly administration of justice. In the absence of direct attack the order must be obeyed subject to the penalties of contempt, unless it is transparently invalid or has only a frivolous pretense to validity. Walker v. City of Birmingham, supra. Should a lawyer feel aggrieved by the judge's order there is a professional way to seek relief. If the order is so outlandish or onerous as to reflect upon the judge's competence to preside, the matter could be referred to the Judicial Qualifications Commission. If it results in a lawyer being "barred" from that particular courtroom or being threatened with contempt, there are remedies available to him for direct *23 attack. See, e.g., Friedman v. Friedman, supra; United States v. Dickinson, supra; cf. State ex rel. Everette v. Petteway, supra.
The wearing of a coat and necktie in open court has been a long honored tradition. It has always been considered a contribution to the seriousness and solemnity of the occasion and the proceedings. It is a sign of respect. A "jacket and tie" are still required dress in many public places. The Supreme Court of the United States by "Notice to Counsel" advises that appropriate dress in appearing before that court is conservative business dress. Would anyone question that includes a coat and necktie?
In our judgment the court's order requiring appellant to wear a tie in court was a simple requirement bearing a reasonable relationship to the proper administration of justice in that court. Appellant's dogged refusal to comply demonstrated a total lack of cooperation by counsel and was hardly befitting a member of the bar.
Affirmed.
OWEN, C.J., and WALDEN, J., concur.