Martin FRIEDMAN, Appellant,

v.

DISTRICT COURT, Appellee.

No. 4004.

Supreme Court of Alaska.

May 16, 1980.

Martin Friedman, in pro. per.

Bruce M. Botelho, Asst. Atty. Gen. and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

Appellant Friedman is an attorney at law. He appeals from three contempt orders concerning his manner of dress during appearances in court.

The first incident occurred on January 11, 1977, before Superior Court Judge James A. Hanson, then sitting as a district court judge. The relevant order recites that Friedman appeared in court as an attorney, "not wearing an appropriate coat and tie after being advised on numerous occasions that such attire was to be worn on appearances before this court." A fine of $100, suspended upon Friedman being properly attired in future appearances before the courts, was imposed.

The second incident took place before District Court Judge James C. Hornaday on February 8, 1977. The order of contempt recites that Friedman appeared in court on a case not wearing a coat and tie, that Friedman had been advised on numerous occasions that attorneys would be required to be attired in "appropriate conservative business dress which would include, but not be limited to, an appropriate coat and tie." The order also states that Judge Hornaday has held court in numerous places and that Friedman is the only attorney who, in other than emergency situations, has appeared

without a coat and tie. Friedman was ordered to pay a fine of $25.

The third incident was before Judge Hornaday on February 14, 1977. The order makes similar recitals to that concerning the second incident, and imposes a fine of $50.

Friedman contends that the imposition of a dress code violates his rights to personal liberty and privacy under the Alaska Constitution.[1] He relies in part on our decision in *Breese v. Smith*, 501 P.2d 159 (Alaska 1972), where we held that the hair length of a public school student could not be prescribed by school officials. He asserts that an attorney's style of dress, so long as it is not disruptive of judicial proceedings, is beyond the power of the courts to control.

█ In our view, a court may impose minimum standards of dress for the attorneys who appear before it. While a court cannot adopt a dress code which is unduly rigid or which attempts to dictate matters of taste and esthetic preference, the requirement of merely wearing a coat and tie is a reasonable one. As the court observed in *Sandstrom v. State*, 309 So.2d 17 (Fla. App.1975):

"The wearing of a coat and necktie in open court has been a long honored tradition. It has always been considered a contribution to the seriousness and solemnity of the occasion and the proceedings. It is a sign of respect. A 'jacket and tie' are still required dress in many public places. The Supreme Court of the United States by 'Notice to Counsel' advises that appropriate dress in appearing before that court is conservative business dress. Would anyone question that includes a coat and necktie?

In our judgment the court's order requiring appellant to wear a tie in court was a simple requirement bearing a reasonable relationship to the proper administration of justice in that court."

*Id.* at 23. On further appeal, the Florida Supreme Court held that it lacked jurisdiction over the appeal, although three judges dissented on the merits and would have held in favor of the attorney. 336 So.2d 572 (Fla.1976). Sandstrom appeared in court in a suit, clean and pressed shirt, and a hanging gold medallion. He thus wore a "string tie." He was held in contempt for not wearing a fabric tie. In *Sandstrom*, it could well be contended that the trial court was attempting to adopt an unduly rigid dress code dictating matters of taste and esthetic preference. In contrast to Sandstrom, Friedman appeared in court without any suit coat or necktie.

Attorneys occupy a different position in relation to the courts than do ordinary citizens. Attorneys are officers of the court. The privilege of practicing law is subject to certain conditions, among which is that an attorney must observe reasonable rules of courtroom behavior and decorum. Courts have long controlled the manner in which attorneys may appear before them. Very few reported cases bear upon the question of proper dress.[2] The paucity of litigation on this point probably indicates the cooperation of most attorneys and the restraint of most courts in the matter of appropriate dress.[3]

In *People v. Rainey*, 224 Cal.App.2d 93, 36 Cal.Rptr. 291 (1964), the court upheld the

---

1. Alaska Constitution, Art. I, Secs. 1 and 22.

2. *See generally*, Anno., 73 A.L.R.3d 353 (1976). Friedman relies on *Peck v. Stone*, 32 A.D.2d 506, 304 N.Y.S.2d 881 (1969), *Kersevich v. Jaffrey*, 114 N.H. 790, 330 A.2d 446 (1974), and *Sandstrom v. State*, 336 So.2d 572 (Fla.1976) (dissent).

 In *Peck v. Stone*, 304 N.Y.S.2d 881, a woman attorney was found in contempt because the length of her hemline was unacceptable to the trial judge. This was reversed on appeal because the trial court had not articulated "suitable, conventional, and appropriate" rules concerning courtroom attire. *Kersevich v. Jaffrey*, 330 A.2d 446, concerns the attire of a party to a criminal proceeding, not that of an attorney.

3. In England, and in many other nations, the question could hardly arise, as barristers are there required to appear in robes, so that the standard is most specific. As Cardozo, J., has noted, English barristers historically were regulated in minute detail, "even in matters so personal as the growth of their beards or the cut of the dress." *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 162 N.E. 487, 490 (1928).

authority of the trial court to ask a female attorney to abstain from wearing an inappropriate hat in court, and held that the control of the courtroom dress rests within the discretion of the judge. In *LaRocca v. Lane*, 37 N.Y.2d 575, 376 N.Y.S.2d 93, 338 N.E.2d 606 (1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1464, 47 L.Ed.2d 734 (1976), an attorney who was also a Roman Catholic priest was ordered to change his clerical garb before appearing as defense counsel in a criminal trial. The order was sustained on appeal against the contention that it infringed upon the free exercise of religion. And *Champion v. State*, 456 P.2d 571 (Okl. Cr.1969), also upholds a contempt finding against an attorney who appeared in court without a coat and tie.[4]

 Thus we conclude that it was within the powers of the court to require at least the wearing of a coat and tie for court appearances by Friedman. Friedman argues that the requirement of a coat and tie impairs his ability to represent his clients effectively, because the coat and tie may be viewed by jurors with suspicion and may place the attorney at a disadvantage in dealing with the jury. We find no merit in his contention that this interferes with his duty to represent his clients zealously, as required by Ethical Consideration EC 7–1. Similarly, we find no merit in the contention that the coat and tie requirement amounts to impermissible gender discrimination because it applies to males and not females.[5]

This, however, does not dispose of the questions on appeal. Civil Rule 90 provides:

"(a) *Contempt in Presence of Court.* A contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

 The contempt citations here comply with the rule in one respect: the judge in each instance saw Friedman in court without a coat and tie. But the first and second instances, before Judge Hanson and Judge Hornaday, respectively, are dependent upon Friedman having been told on previous occasions that he should appear in a coat and tie. Nothing in the record on appeal establishes the fact of such prior warnings. As to this question, Friedman is entitled to a hearing. His contempt, if any, hinges on matters outside the record of what took place before the court on the two occasions in question.[6] Thus we must reverse and remand for further proceedings consistent with this opinion.

As to the third instance, before Judge Hornaday, normally we would view the order entered in the second instance as supplying the notice of dress requirements which were not observed at the third instance. However, these two events were separated by only six days. Friedman asserts that he had no clear prior warning of the dress code requirements. In the circumstances, we think it best to reverse all three of the contempt orders, and remand for further proceedings. On remand, there must be proof of a court order establishing the coat and tie requirement, and proof that Friedman knew of it.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**4.** The coat and tie matter in *Champion* must be gleaned from *Bearden v. State*, 458 P.2d 914, 919 n.2 (Okl.Cr.1969).

**5.** We presume, and appellant has not demonstrated to the contrary, that the courts' orders requiring "appropriate conservative business dress" applies to attorneys of both sexes. Though women need not be required to wear a coat and tie, they are required to wear conservative business attire. Such a dress code would not discriminate since the general standard is the same.

**6.** Friedman recites in his brief on appeal, that Judge Hornaday had announced, eight months before, that a coat and tie would be required for all court appearances, but that he also stated that no coat and tie would be necessary if counsel opposing Friedman had no objection to Friedman's dress.

RABINOWITZ, Chief Justice, dissenting.

In *Breese v. Smith*, 501 P.2d 159, 169 (Alaska 1972), we recognized that the constitutions of the United States and Alaska "reflect a pluralistic society, grounded upon such basic values as the preservation of maximum individual choice, protection of minority sentiments, and appreciation for divergent life styles." In *Breese*, we further observed that "[t]here are few things more personal than one's body and its appearance, and there could be few laws more destructive of the notion that there is a range of decision making within which the individual is autonomous than a rule regulating physical makeup."

I think it clear that the courts of Alaska can require attorneys to dress in reasonable attire in order to preserve the dignity of the judiciary and judicial proceedings. Thus, I agree with the majority's conclusion that the courts of Alaska are authorized to impose minimum standards of dress for attorneys who make court appearances. My disagreement with the majority's opinion in the case at bar focuses on the holding that a dress code which requires the wearing of a coat and tie is reasonable.

In my view, Judge England's dissent in *Sandstrom v. State*, 336 So.2d 572, 578 (Fla. 1976), is particularly persuasive. In part, Judge England observed:

> There are those who will fear that small incursions on the formality of courtroom attire might lead to an erosion of our ability to perform important public work and in time contribute to a wholly unacceptable courtroom atmosphere. This case does not in fact present an incremental change, let alone one which would inevitably lead to that situation. It is not unusual in the contemporary governmental world for men of high purpose to go about their affairs without a necktie, and it can pose no threat to our judicial system to permit attorneys freedom to adopt the reasonable clothing styles of the time. I reject any inference that respect for the judicial system is dependent upon male attorneys wearing neckties. Surely the dignity of the judiciary rests on more substantial ground.[1] (footnotes omitted)

Given the personal liberty interest involved, I am of the view that no attorney should be subject to contempt proceedings so long as her or his attire does not interfere with the judicial proceedings or manifest disrespect for the court. Distracting or bizarre attire should not be permitted to infringe upon the dignity of the judiciary and its proceedings. But where these interests are not implicated, it is my view that judicial infringement upon the personal liberty of counsel to choose their mode of attire is antithetical to Alaska's constitution.

---

1. Judge England's full dissent should be read.