[Civ. No. 31683. Fourth Dist., Div. One. Apr. 16, 1984.]

J. KENNETH JENSEN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ALFRED JOHNSON et al., Real Parties in Interest.

534

## COUNSEL

J. Kenneth Jensen, in pro. per., for Petitioner and for Real Parties in Interest.

Lloyd M. Harmon, Jr., County Counsel, and Howard P. Brody, Chief Deputy County Counsel, for Respondent.

## OPINION

**BUTLER, J.**—Attorney J. Kenneth Jensen wears a turban.[1] Judge Jack R. Levitt admits turbanned lawyers to his courtroom upon a showing the turban is worn for religious, cosmetic or other "legitimate" purpose. Jensen refuses to answer Judge Levitt's questions about his turban and Judge Levitt denies him access to his courtroom. Following a series of confrontations

---

[1] "A headdress worn chiefly in countries of the eastern Mediterranean and southern Asia especially by Muslims and made of a cap around which is wound a long cloth." (Webster's Third New International Dictionary, Unabridged, G & C Merriam, Publisher, Springfield, Mass. (1968).)

The turban is of obscure Oriental origin which became common among the Turks after the capture of Constantinople in 1453 when the sultan imitated the Prophet Muhammad by surrounding his cap with white muslin wound round and round. Since the early 19th century, the wearing of the turban is no longer obligatory (Vol. X, The New Encyclopedia Britannica, 15th ed., p. 189).

The turban is described as a badge of Muslims to distinguish them from the unbelievers. To put on the turban is to adopt Islam. It is not a religious duty to wear the turban; it is simply recommended. (Shorter Encyclopedia of Islam, Cornell University Press, Ithaca, N.Y. (1953).) "In modern times there has arisen a movement against the turban, which is more or less apparent through the whole of the east. Men are reluctant to wear a turban and the young people and the women laugh at it and say: 'the board for washing the dead is better than winding a turban.' . . . This modern development is attacked in a number of special treatises on the turban mentioned below, notably the last one by Kattani, and according to them, any one who succeeds in restoring the turban to a country acquires the merit of reviving a good tradition . . . . The modern development however can hardly be checked, and in Turkey a hundred years ago the turban was officially replaced by the fez, which in its turn had to give way in 1925 to the modern European hat . . . (cf. *Oriente Moderno*, v. 630 sq.), just as in modern Persia the turban has been driven out by the kulah." (*Id.*, at p. 598.)

over the years, Jensen challenged Judge Levitt at a hearing on a demurrer, charging him with bias and prejudice because of the "no-turban without explanation" edict.

Judge Levitt transferred the disqualification issue to the presiding judge who set a hearing for January 31, 1984, in his department. Judge Levitt rescheduled the hearing on the demurrer in his department for the following day.

Jensen filed mandamus here (4 Civ. 31566) to require the court to follow the hearing procedures prescribed in Code of Civil Procedure section 170, subdivision (d)[2] requiring the parties to agree upon another judge to hear the disqualification, or failing that, by a judge assigned by the Chief Justice. On being informed the parties would agree upon a judge to hear the disqualification issue and the hearing on the demurrer before Judge Levitt set for February 1 had gone off calendar, we denied Jensen's petition without prejudice.

Another superior court judge held the hearing to determine disqualification. Concluding the evidence did not negate bias or prejudice, the court suggested the need for and Judge Levitt filed another declaration denying any bias or prejudice against Jensen. The court then made findings to that effect and concluded Judge Levitt was not disqualified. Jensen then filed these proceedings in mandamus asking us to disqualify Judge Levitt and order the demurrer heard before another judge. We stayed proceedings below pending disposition here.

We construe Jensen's petition as seeking the right to appear turbanned in Judge Levitt's courtroom. As so construed, we grant the writ and order the superior court to permit the turbanned Jensen to appear and practice law before it without having to reveal why he wears a turban, unless the court can establish through proper procedure the turban interferes with or disrupts justice.

I

■ As framed by Jensen, the writ asks us to disqualify Judge Levitt and assign the case to another judge. This we cannot do. We do not sit as a court to determine the bias or prejudice of a judge challenged under section 170, subdivision (a)(5) and we do not assign trial judges.

■ Two basic requirements are essential to the issuance of a writ of mandate: a clear, present and usually ministerial duty of the respondent to

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise specified.

do the act sought to be required and a clear, present and beneficial right in the petitioner to the performance of the act. (*People* ex rel *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193]; §§ 1085 and 1086; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 61, p. 3838.) ■■■ Jensen's petition does not meet these requirements.

Jensen mislabels his grievance. Neither mislabeling nor a defective prayer will bar relief justified by proper allegations and proof. Courts should grant such relief as is warranted by the facts shown. (*Sekt* v. *Superior Court* (1944) 24 Cal.2d 73, 76 [147 P.2d 568]; 6 Witkin, *op. cit. supra,* § 183, pp. 3942-3943.)

We conclude the writ poses issues touching: (1) upon the right of a turbanned attorney in good standing to appear before the superior court without being subjected to questions concerning religious belief or physical appearance where no showing is made that attire conforming to such belief or adjusted to such appearance is disruptive of the judicial process and (2) violation of an order we issued years ago describing the circumstances in which a judge may proscribe courtroom attire.

II

Jensen and his turban are not strangers to this court. So garbed, he regularly appears before us. He has always been proper and polite. We judicially notice earlier proceedings (4 Civ. 11307). On November 8, 1972, we ordered a peremptory writ compelling the San Diego Superior Court to vacate a rule prompted by Jensen's appearances in court while wearing his turban: ". . . that no male attorney shall appear in court with his head covered." We held the test for attire: ". . . is whether it interferes with courtroom decorum by disrupting justice, i.e., whether it tends to cause disorder or interfere with or impede the functioning of the court. (See *Myers* v. *Arcata etc. School Dist.,* 269 Cal.App.2d 549, 558, lines 14-17; *Peck* v. *Stone,* 304 NYS 2d 881.) There is no showing of such interference or disruption here."

While the opinion was promulgated in 1972, the writ itself issued to the San Diego Superior Court April 4, 1977, prompted by the ruling of another judge prohibiting the appearance in his courtroom of pantsuited women attorneys, which, coincidentally, occurred at about the time the Chief Justice of California, Rose Elizabeth Bird, took her oath of office while attrac-

tively attired in a pantsuit. The writ[3] permitted the wearing of attire in San Diego Superior Court courtrooms unless the attire presents a "clear and present danger of causing disorder or interfering with or impeding the functioning of the court." On May 6, 1977, we denied the superior court's motion to recall the writ. No appeal was taken and the writ is binding upon the superior court. We expanded our earlier 1972 opinion with these comments in denying the motion to recall the writ: "County Counsel, on behalf of respondents, has advised us 'the subject matter of the motion is of great importance to the Superior Court.' The matter has resurfaced because of a local court's attitude toward pantsuited women. If concern arises over perceived interference with the inherent power of the superior court to control appearance or behavior disruptive of courtroom proceedings, we believe such concern is unwarranted. We find nothing in the opinion or writ which limits the authority of the court to control, if necessary by means of the contempt power, appearance or behavior which in fact interferes with or disrupts the functioning of the court." We observe Jensen's unusual sartorial tastes have been exhibited in San Diego courtrooms for some 13 years. With the apparent exception of Judge Levitt, he now appears without remonstrance from the judiciary who arguably are resigned to what they perceive as the inevitable. *O tempora! O mores!*[4]

### III

We turn to the proceedings leading to the writ before us. Jensen filed a complaint for his plaintiff client. A demurrer was calendared in Judge Levitt's court. Jensen filed opposing papers and the section 170, subdivision (a)(5) challenge. Judge Levitt transferred Jensen's challenge to the presiding judge who referred it for hearing as required under section 170, subdivision (d). Judge Levitt filed a declaration:

---

[3]The writ provided in pertinent part as follows:

"THEREFORE, you are commanded, immediately upon receiving this writ, as follows:

"1. *You shall permit those persons who appear before you to do so without limitation as to their attire*, except such limitation as you may reasonably find on the basis of evidence presented to you is necessary to prevent interference with courtroom decorum by disrupting justice, that is, by tending to cause disorder or to interfere with or impede the functioning of the court.

"2. You shall comply with the order contained in the preceding paragraph, despite any local court rule, standard, policy, opinion, or preference of any of your judges which purports to provide to the contrary.

"3. Should you, or any of your judges, in the future adopt any local rule, standard or policy regarding attire to be worn by any person appearing before you, such local rule, standard or policy shall be narrowly drawn, so as not to prohibit the wearing of any attire, except such as presents a clear and present danger of causing disorder or interfering with or impeding the functioning of the court."

[4]Cicero, *In Catilinam,* I (Familiar Quotations, John Bartlett, 15th ed. (1980) Little, Brown & Company, p. 98.)

"............

"2. On or about 1972, attorney J. Kenneth Jensen asked to see me regarding his wearing of certain head covering (a turban) in Court. Although I do not maintain a particular dress code for attorneys who appear in my courtroom, I did want to confirm that a legitimate purpose existed for the wearing of a turban. I asked attorney Jensen, in chambers, whether his head covering was worn for religious observance, for a cosmetic necessity, or for any other purpose. He refused to respond to my question.

"I have no bias against anyone who wears a head covering in the courtroom so long as it serves a legitimate purpose. Other attorneys have appeared before me wearing a turban in observance of their religious beliefs."

Jensen's declaration recited a series of appearances before Judge Levitt. On October 8, 1976, Jensen, wearing his turban, appeared before Judge Levitt. The court told Jensen:

"THE COURT: Mr. Jensen, this Court has a rule against wearing headgear. Would you please remove—

"MR. JENSEN: Well, your Honor, I'll have to withdraw then from these proceedings.

"THE COURT: It's entirely up to you."

After speaking with opposing counsel, the following colloquy occurred:

"THE COURT: Mr. Jensen, the Court has a rule; you will have to remove your headgear if you wish to address the Court.

"MR. JENSEN: Very well, your Honor. May—very well, your Honor. I'll—" After Jensen departed, the court ruled in favor of the opposing party, setting aside a default and taking a demurrer under submission.

On November 30, 1976, the same case was calendared by Jensen's opposition before Judge Levitt on a motion for summary judgment. The court's tentative ruling was to grant the motion.

"THE COURT: No. 11, Kepple vs. Kepple.

"MR. BORMAN: I notice the tentative ruling. Mr. Jensen was here and apparently departed. [¶] I, of course, accept the tentative ruling of the Court. I would note since apparently Mr. Jensen isn't here." An attorney

then announced a special appearance on behalf of Jensen, stating his authority was limited to moving Judge Levitt should disqualify himself. The court properly denied the motion and granted summary judgment.

On March 12, 1982, Judge Levitt filled in as presiding judge in the master calendar. Jensen was present representing a client. Judge Levitt ordered his bailiff to direct Jensen to remove his turban. Jensen declined to do so. No action was taken by the judge.

On April 12, 1983, Jensen had another matter before Judge Levitt. Jensen filed with the clerk a section 170.6 peremptory challenge. The clerk informed the judge of the declaration, returned to the courtroom and advised Jensen to remain there. The judge took the bench:

"THE COURT: Mr. Jensen, the Court is now in session. You will either have to now remove your hat or yourself.

"MR. JENSEN: Very well, your Honor. I have filed a 170.6. May I submit it to the Court—therefore I shall have to remove myself—

"THE COURT: All right.

"MR. JENSEN: To Department One, your Honor."

At the hearing on the challenge, the court suggested Judge Levitt's declaration did not deny prejudice or bias and asked for and received a second declaration from Judge Levitt which reads:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"2. That I have no bias against J. Kenneth Jensen.

"3. That I have no bias against turbans or those who wear turbans.

"That I believe that the decorum of the court requires a certain minimal dress code for practicing attorneys in a court of law. For attorneys of Mr. Jensen's sex that means some kind of appropriate jacket, tie, shirt, trousers and shoes. It also means no headwear. It is a common rule of courtesy that headwear is removed when entering a building. This would be especially significant when entering a court of law by a practicing attorney.

". . . . . . . . . . . . . . . . . . . . . . . . . ."

The court then denied the motion for disqualification.

## IV

■ Judge Levitt's last declaration denies any bias or prejudice toward Jensen. He permits turbans and other headgear in his courtroom if required for religious, cosmetic or other legitimate purpose. This compels the turbanned attorney to disclose religious beliefs, cranial disfigurement or other reasons for turban wearing for Judge Levitt's review as a condition to the practice of law in his courtroom.

To state the issue in such broad aspect is, of course, to answer it. Admission to the practice of law is without regard to race, color, creed, sex, national origin or cosmetic defect. To require a lawyer to disclose religious beliefs as a condition to appear before a judge returns us to those troubled times our ancestors fled in their search for freedom from religious oppression.

We hold to the belief no person need declare his or her faith, or lack of it, to engage in the practice of law. Courtroom inquisition concerning physical condition or cosmetic appearance is an invasion of privacy. To deny Jensen the right to practice law for his failure to explain his wearing of the turban affronts these simple precepts which require no citation of authority.

Apart from these considerations, Judge Levitt's no-turban policy does not accord with the peremptory writ we issued April 4, 1977, requiring superior court judges to allow the wearing of attire except that which interferes with or impedes the functioning of the court. We find nothing in the record suggesting these concepts were considered by Judge Levitt in the adoption of his courtroom dress code.

We thus enlarge the writ to contemplate the denial by the court of Jensen's right to practice law while turbanned without a showing of disruption to the judicial process, and, as so enlarged, grant the writ.

## V

■ We restate the right and the duty of the court to apply the test we enunciated in our unpublished opinion (4 Civ. 11307) in 1972: "The test for attire is whether it interferes with courtroom decorum disrupting justice, i.e., whether it tends to cause disorder or interfere with or impede the functioning of the court." In further proceedings in that case in 1977, we amplified our comments and cited *Peck* v. *Stone* (1969) 32 App.Div.2d 506 [304 NYS 2d 881], where the court stated: ". . . any order or regulation imposed upon attorneys . . . must be based upon factual conditions which leave no doubt that a continuance of the proscribed conduct will result in a

disrespect for order and an impairment in the administration of justice." (*Id.*, at p. 884.)

In the courtroom we adjudicate civil controversies and criminal wrongdoing. Life, liberty and property are issues that deserve a forum other than the marketplace. As moneychangers may be driven from the temple, courts have the right to require appropriate dress, decorum and demeanor to assure proceedings that touch upon basic interests are conducted in a reasoned and rational fashion free from distraction and disruption prompted by bizarre behavior or dress.[5]

In the exercise of that right, we should be mindful of our pluralistic society, the preservation of individual choices and appreciation for divergent lifestyles. A judge hearing law and motion matters is differently situated from the judge presiding over a jury trial. Distraction and disruption are not absolutes. They are to be measured objectively in the context of the circumstances presented. Disruption, unlike beauty, is not in the eye of the beholder. More is required to establish interference with courtroom processes than a judge's personal idiosyncrasies.

In short, we announce no dress code. We have confidence the good taste and sense of community mores of trial judges seasoned with their perceptions of changing times will strike the balance between attire appropriate to the circumstances and that which distracts and thus disrupts judicial proceedings.

Writ granted. The superior court is directed to permit the turbanned Jensen to appear and practice law before it without having to reveal why he

---

[5]*People* v. *Rainey* (1964) 224 Cal.App.2d 93 [36 Cal.Rptr. 291] considered remarks by a judge to the effect hats worn by a woman attorney during a criminal trial were distracting to jurors as constituting judicial misconduct warranting a new trial. The judge suggested in the presence of the jury the attorney should appear hatless. She declined to do so and continued to appear "hatted." The court held the no-hat request to be reasonable and within the judge's right to assure courtroom decorum and behavior to be consistent with the orderly conduct of proceedings free from disruptive influence. *Friedman* v. *District Court* (Sup.Ct. Alaska 1980) 611 P.2d 77, while reversing orders finding an attorney in contempt for failing to wear a coat and tie in court, approved a court-imposed dress code requiring such attire as being reasonable. "Attorneys occupy a different position in relation to the courts than do ordinary citizens. Attorneys are officers of the court. The privilege of practicing law is subject to certain conditions, among which is that an attorney must observe reasonable rules of courtroom behavior and decorum. Courts have long controlled the manner in which attorneys may appear before them. Very few reported cases bear upon the question of proper dress. [Fn. omitted.] *The paucity of litigation on this point probably indicates the cooperation of most attorneys and the restraint of most courts in the matter of appropriate dress.* [Fn. omitted.]" (*Id.*, at p. 78, italics added.)

Chief Justice Rabinowitz dissented on the grounds an attorney should not be subjected to contempt proceedings so long as attire does not interfere with or manifest disrespect for the court.

wears a turban, unless the court can establish through proper procedure the turban interferes with or disrupts justice. The stay in Johnson, et al. v. Short, et al., San Diego Superior Court Case No. 491737 is lifted.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 2, 1984. The application of petitioner and the petition of respondent for a hearing by the Supreme Court were denied June 14, 1984.