Ernest W. CRUMB, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14753.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1969.

Rehearing Denied April 9, 1969.

Second Rehearing Denied Oct. 7, 1969.

J. B. Champion, Jr., Ardmore, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Burke Mordy, Dist. Atty., for defendant in error.

BUSSEY, Judge.

Ernest W. Crumb, hereinafter referred to as defendant, was charged in the District Court of Carter County with the offense of Murder; he was found guilty of Manslaughter in the First Degree, and from the judgment and sentence assessing his punishment at imprisonment in the State Penitentiary for a term of 25 years, he appeals.

This case was set for trial by jury on the 23rd day of May, 1967, but a motion for continuance was filed by the defendant wherein it was stated that the defendant's attorney, because of ulcers, would be unable to engage in a "controversial trial or a contested case" for a period of approximately thirty days. This motion for continuance was sustained and the case was passed to the next docket. The case was then set for trial by jury on the 22nd day of September, 1967, and on the 18th day of September, 1967, the attorney for the defendant filed a new motion for continuance in which he once again alleged that he was unable to try the matter because of illness resulting from ulcers. The motion for continuance was sustained after the court heard testimony and thereafter, in open court, the following proceedings were had: At page 105 of the case made:

"(REPORTER'S NOTE: As to this case of State vs. Ernest W. Crumb, the Court then recessed, but later in the afternoon Mr. Champion appeared in the district court room with his two clients, E. K. Bearden and Ernest W. Crumb, and Court reconvened and the following

occurred. This being late afternoon of September 18, 1967.)

THE COURT: Let the record present at this time; Mr. E. K. Bearden and Mr. Ernest Crumb, are present in court, with their attorney, Mr. J. B. Champion. And I would advise them, the reason they were requested to be here was not for the purpose of trying them, or anything of the kind, but because the court was not willing to make a ruling, a definite ruling in their cases without them being present to know what was being done. I am not going to ask you any questions at all. But I do want to advise each of you that your cases were set for trial on the May docket, as I am sure you are both aware, and that at that time your attorney, Mr. Champion, filed a motion for a continuance, with an affidavit by Dr. Frank Clark attached, saying, well in essence * * *"

Page 107 of the case made:

"THE COURT: * * * Mr. Champion has filed another motion for a continuance, which is almost—not exactly, but almost identical with the one filed back in May: that he has ulcers and that it would endanger his life to try the case. We had a hearing on them up here for about an hour or so, and after we heard it I told both counsel that I would not rule on it without you gentlemen present and know what was going on. You are present now, and the court is now getting ready to rule on them. * * *

Page 109 of the case made:

"THE COURT: * * * But I wanted you all to understand what we are doing and why. The cases are being continued at this time. They will be re-set at the earliest opportunity. Now, I can't tell you when that will be. It may be thirty days or it may be sixty. But I am telling you now, that whenever it is you will be expected to be here ready to go to trial, whether with Mr. Champion or some other lawyer. * * * And I want you all to understand that the continuance is being granted, but on the condition that this is the last one. There will be no more. And that whenever the court sets it in the future, whch may be thirty days or sixty days, and it might not even be until next January, I can't tell at this time. * * * But whatever it is, you will be expected to be ready to go to trial at that time. If Mr. Champion is not ready then it will be up to you to have you an attorney, whether it be you or somebody else. Now, do either of you have any questions to ask? * * * I think you understand what I am trying to say.

MR. CRUMB, the defendant: Yes.

MR. BEARDEN: Yes sir."

The case was set once again to be tried by jury on the 26th day of October, 1967, and on the 20th day of October, 1967, the attorney for the defendant filed a motion for a continuance in which he again stated that he was ill and unable to proceed with the matter. On the 23rd day of October, 1967, the motion of the District Attorney to strike the motion for a continuance, as well as çertain other motions, were sustained by Judge Shilling. On the 23rd day of October, 1967, the defendant's attorney filed a motion for a continuance in which he once again alleged that he was too ill to proceed in the case. The motion for continuance was heard by the Court on the 23rd day of October, 1967, and at page 166 of the case made the following appears:

"THE COURT: And your case has been set for Thursday, I believe it is?

MR. CRUMB: Yes sir.

THE COURT: Will you be ready for trial at that time?

MR. CRUMB: No. I won't be ready. Of course I've been ready all the time, and my lawyer hasn't been ready.

THE COURT: Have you made any effort to get another lawyer?

MR. CRUMB: No sir.

THE COURT: Did I call your attention to that fact at the last hearing, that—

MR. CRUMB: Yes sir.

THE COURT: Are you able to hire another lawyer?

MR. CRUMB: No sir.

THE COURT: Do you desire the Court to appoint you a lawyer?

MR. CRUMB: No sir, I don't.

THE COURT: Do you expect to handle your own case?

MR. CRUMB: I don't think I could do that. I'm a mechanic, not a lawyer.

THE COURT: That was the point I was making. You were advised about a month ago that your case would be set for trial, and that you would be expected to be ready, and if you needed another lawyer you were expected to have him ready. Is that true? Do you desire the court to appoint you a lawyer?

MR. CRUMB: I didn't figure any other lawyer knew anything about the case anyway.

THE COURT: Do you desire the Court to appoint you a lawyer?

MR. CRUMB: No.

THE COURT: Very well. I think I have advised both of you—the only thing I haven't advised you—and I probably ought to do that—.

MR. CRUMB: I done paid one lawyer all the money I got.

THE COURT: Well, that's the only thing that entitles me to appoint you one, if you desire to have another one, the fact that you don't have any money left to pay one with, that would authorize me to appoint you one and have him paid out of the court fund. I asked you if you wanted me to appoint you an attorney? (Pause) You still say you do not?

MR. CRUMB: No. I don't want another lawyer. I done paid one lawyer, that is the one I want.

\* \* \* \* \* \*

MR. CHAMPION: \* \* \* I will be here with these boys, but I am not going to stand and defend them. And I am going to instruct them to stand mute, because I am not able to defend them. \* \* \*"

The case came on for trial by jury on the 26th day of October, 1967, and before the trial the court stood in recess, and the Judge, the District Attorney, the defendant and his attorney, J. B. Champion, Jr. and the Reporter, retired to the court's chambers. At page 192 of the case made, the following appears:

"THE COURT: The Court here advised you a month ago that you were going to trial when the other continuance was granted. Now, your attorney is still not able, and there is no assurance as to when he will be able.

THE DEFENDANT: I didn't figure on getting another attorney. Another attorney wouldn't know about the evidence that was presented down there or the investigation that has been made, so it wouldn't make much difference anyway as far as another attorney is concerned, wouldn't be of any good to me anyway.

THE COURT: Well, do you want me to appoint you an attorney?

THE DEFENDANT: No, I don't think it would be worth a penny to me.

THE COURT: Have you been familiar with what has transpired in the case we have just been trying?

THE DEFENDANT: No, I don't do anything but just work.

THE COURT: Are you wanting to go to trial and have him sit there like he has done the last day and a half, and not participate in the trial?

"THE DEFENDANT: Well, whatever he thinks about the thing. I done paid him $2,500.00. I can't pay anybody else that much. Whatever he wants to do. I guess if he wants to sit there, he will just have to sit there. If we are going to have a trial anyway, just have it.

THE COURT: There are a couple of other alternatives. I could appoint you an attorney and give that attorney continuance for him to prepare himself.

MR. CHAMPION: At $250.00.

THE DEFENDANT: I don't want another attorney. He has spent a lot of time on this thing.

THE COURT: He said he is not able. He has said it two times when this case was previously set for trial. He says it now, he is not able. He has said it for the past two days. If we go ahead, it is the Court's ruling, or it will be, we will go on to trial, unless you want me to appoint you an attorney and get you another lawyer, in which event the Court would consider a reasonable request for a continuance for that attorney to prepare for trial. * * *

\* \* \* \* \* \*

THE DEFENDANT: I would like to get it over with.

THE COURT: If we go ahead and conduct it properly, and the defendant's attorney, as far as I can tell, is trying to do his best—well, I will try to do mine.

THE DEFENDANT: I think I can get a fair and impartial trial. I don't have any animosity. No malice."

Defendant urges that the trial court erred in overruling his Motion for Continuance, thus forcing the defendant to trial with an attorney too ill to properly and adequately represent him. While there is some evidence in the record tending to indicate that the attorney for the defendant had peptic ulcers, they seem to have only flared up after the case was set for trial. Significantly, although counsel for defendant was diagnosed as having ulcers, he was never hospitalized for them and indeed, although he was allegedly suffering great pain and nausea from them, they apparently did not prevent him from filing numerous motions for continuance and other motions to disqualify the trial judge, nor did they prevent him from vigorously arguing them before the court and appearing as a witness in support of said motions. The defendant was well aware of the alleged illness of counsel and although advised by the court to be prepared for trial either with counsel or another counsel, he never sought to retain one; nor, indeed,

did he accept the court's offer to appoint counsel for him on several occasions. Moreover, on the very day of the trial, when advised by the court of the fact that defense counsel had sat mute for a day and a half in a trial prior to the instant case, the defendant againt refused the judge's offer to appoint counsel and elected to proceed to trial knowing that counsel would remain mute and that he [the defendant] had been instructed to remain silent.

■ We have repeatedly held that the granting or denial of a motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on appeal unless for an abuse of that discretion. Although the factual situation here presented is rather unique, our sister State of Georgia considered almost the identical situation in Mixon v. State (1890), 85 Ga. 455, 11 S.E. 874, wherein a continuance was claimed because of the illness of counsel and the court noted the fact that several prior continuances had been granted and that at the last term the accused was put upon notice that he must procure other counsel, if present counsel was then still sick. In that case the judgment of the lower court was affirmed.

■ Upon the record before us it is abundantly clear that the trial court did not abuse its discretion in overruling defendant's Motion for Continuance, for from the pleadings filed by counsel for the defendant and his various appearances before the court, the trial court had ample opportunity to observe the attorney and determine whether he was capable of representing the defendant. Moreover, the striking pattern of counsel's alleged illness occurring when this case was set for trial, must have led the trial court to conclude that the Motions for Continuance were merely for the purpose of delay since the defendant was at liberty on bond, and apparently gainfully employed. The fact that counsel for defense elected to stand mute during the trial and failed to cross-examine the State's witnesses, is to us no proof of his willing-

ness or inability to represent the defendant, but was apparently a tactical decision whereby he hoped to arouse the jury's sympathy,[1] or at least lay the framework for the alleged claim of denial of due process on appeal should the defendant be convicted, as indeed he was.

■ This leads us to a consideration of the defendant's allegation that the District Attorney suppressed or concealed evidence from the jury that the State's principal witness, and mother of the deceased, who was present at the homicide and testified as to the facts and circumstances surrounding it, was a person of bad reputation and a heavy drinker, and had given conflicting statements concerning the homicide. Such allegation is not supported by the record and is specifically denied by the District Attorney who presented to the jury the testimony from which it could be reasonably ascertained that this witness had on the night in question, drunk a considerable quantity of intoxicating liquor. Ample opportunity was given to cross-examine this witness, but the defendant elected not to do so. Moreover, the prosecuting attorney, in his closing argument to the jury, stated that the witness was "not an articulate person," nor "any past president of the P.T.A." We accordingly find this assignment of error to be wholly without merit.

■ Defendant further argues that had all the facts been presented to the jury, he would have been acquitted. Certainly, he was given every opportunity to give these facts to the jury, but elected not to do so, and the mere fact that the trial judge prior to trial, stated his opinion that from the little he knew of the case it was a weak one, does not support this allegation. The jury had before them testimony that after a few heated words the defendant stabbed the deceased with a hunting knife which inflicted a wound in the abdominal area and the testimony of Dr. Clark who stated

that the cause of death was from bleeding as a result of the wound inflicted, there is not one scintilla of evidence which tends to any degree to raise the defense of self-defense. We must therefore hold that the evidence amply supports the verdict of the jury and the judgment and sentence appealed from must be accordingly affirmed; however, in the interest of the proper administration of justice, we take judicial notice of the case of Bearden v. State, Okl.Cr.App., 458 P.2d 914, in which that defendant was sentenced to only 15 years imprisonment for a similar crime and under similar circumstances.

■ We are therefore of the opinion that the judgment and sentence herein should be modified from 25 years to 15 years imprisonment, and as so modified, the judgment and sentence is affirmed.

BRETT, P. J., and NIX, J., concur.

---

1. Appearing in the case made at page 203, after Dr. Frank W. Clark had testified on direct examination by the State, counsel was asked if he desired to cross-examine, and he stated, "Well, I am not going to cross-examine the doctor. You are the doctor who stated that I should be in the hospital?" Objection. Sustained.