**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Petitioner,**

v.

**Joe Ben CHAMPION, Respondent.**

**S. C. B. D. No. 2155.**

Supreme Court of Oklahoma.

March 3, 1970.

Paul Vassar, Gen. Counsel for Oklahoma Bar Ass'n, Oklahoma City, for petitioner.

Joe Ben Champion, pro se.

Clyde J. Watts, Oklahoma City, for respondent.

JACKSON, Justice.

Respondent, Joe Ben Champion, Jr., was suspended from the practice of law on August 20, 1968, for his failure to pay his Integrated Bar dues as required by the Rules Creating and Controlling the Oklahoma Bar Association. 5, Chap. 1, App. 1, Article VIII, Sections 1 and 2, O.S.Supp. 1967, pp. 122 and 123. Respondent made application for reinstatement to active membership in the Association as authorized by Article VIII, Section 3, Rules, supra, and on September 5, 1968, this Court issued a temporary permit for Mr. Champion to practice law pending the result of his application for reinstatement. While the application for reinstatement was pending Respondent was notified in writing by officials of the Bar Association of numerous specific complaints of dereliction of duty to his clients as an attorney, and was advised that a hearing before the Board of Governors of the Association concerning the specified complaints would be required before the Board could certify to the Supreme Court "whether the applicant has the requisite moral qualifications and is competent to practice law." Article VIII, Section 3, Rules, supra. The hearing was conducted by the Board on November 14, 1968, after Counsel for the Association announced that he would assume the burden of proving Respondent did not have the requisite moral qualifications and competency to practice law. No contention was made that any of the activities of Respondent involved moral turpitude, or that he was incapable of practicing law.

Counsel for the Association introduced evidence in connection with six specific complaints made to the Association by clients of Mr. Champion. These complaints consisted of neglect of duty in keeping his appointments with his clients; in failing to attend court to present his motions and in allowing default judgments to be taken; in failing to answer their correspondence and returning their long distance telephone calls; and in failing to complete the litigation assigned to him after collecting fees and costs.

■ In one of the foregoing complaints the client complained that Respondent obtained a divorce for her but neglected to file the journal entry of judgment after numerous demands had been made, and neglected to respond to telephone calls and correspondence from her attorney and counsel for the Bar Association in that connection. At the hearing inquiry was made as to whether it was considered ethical for an attorney to withhold filing a divorce decree based upon whether his fee had been paid. Respondent answered "Well, I'll have to say that if I did not think it was right to do it. I wouldn't have done it." No specific canon of Professional Ethics is cited either for or against this type of practice. However, we regard this as a bad practice. It brings the bench and the bar into disrepute and leads to difficulties and unnecessary confusion, especially so when the judge who tried the case has retired from the bench. See Article IX, Section 2, Rules, supra.

In the case of West v. State of Oklahoma, Okl.Cr., 427 P.2d 653 and 428 P.2d 888, Mr. Champion, as attorney for the appellant, requested and was granted four or five extensions of time to file a brief. No brief was filed and the decision of the trial court was affirmed. The case was reversed and remanded to the trial court for further proceedings in a second opinion after Mr. Champion pointed out in his second petition for rehearing that the trial court had not ruled upon appellant's motion for new trial. Therein the Court of Criminal Appeals said:

"This case has engendered much confusion, difficulty, and unnecessary work because of defense counsel's failure to file a brief and apprise this Court of some of the errors about which he now complains."

Counsel for the Association introduced the docket and files from seven or eight probate cases filed by Respondent in the County Court of Carter County. Petitions in these cases were filed between April, 1960, and March, 1965. These records show that Letters were issued and notice to creditors was given. Inventories were not filed and no further action appears to have been taken. The petitions for probate indicate that in five or six of these cases the deceased owned real property.

Counsel for the Association stated during the hearing that ten additional complaints had been filed against Mr. Champion prior to the instant hearing but had been found to be without substantial merit. He also introduced an exhibit showing that Mr. Champion had been delinquent or tardy in paying his bar dues each year during the past ten years.

Counsel for the Association introduced evidence concerning Mr. Champion's handling of two criminal cases wherein Mr. Bearden and Mr. Crumb were separately charged for murder. Since the briefs refer to the decisions of the Court of Criminal Appeals in those cases, and another appeal wherein Mr. Champion was charged with contempt, we cite them, as follows: Bearden v. State, Okl.Cr., 458 P.2d 914; Crumb v. State, Okl.Cr., 458 P.2d 909; and Champion v. State, Okl.Cr., 456 P.2d 571.

Prior to these trials two continuances were applied for and granted which postponed the trials from May, 1967, to October 25th and 26th, 1967, because Mr. Champion produced evidence that he was suffering from a bleeding ulcer. Notice was given at the time of the second continuance that a third continuance would not be granted because of Mr. Champion's ulcer.

On October 23, 1967, Mr. Champion presented an application (vigorously ac-

cording to the Judge) to disqualify the trial judge, and on October 25, 1967, when the Bearden case was called for trial Mr. Champion announced from time to time that he was unable to try the cases; was physically ill; refused to examine the jurors; refused to make an opening statement; and refused to cross examine the State's witnesses, or present any evidence for the defendant. The trial judge testified that several times during the trial he called Mr. Champion and Mr. Bearden to the bench and offered to declare a mistrial and set the case over and appoint an attorney to represent the defendants; that the defendants refused in each instance upon advice from Mr. Champion not to do so. That prior to the trial during a hearing on one of Mr. Champion's motions, Mr. Champion stated that "he was going to stand there with him and stand there mute and not say anything." That Mr. Champion would not participate in the trial but "would arise and make a speech every now and then."

Mr. Bearden was convicted of manslaughter. Mr. Champion filed motion for new trial but did not appear on November 6, 1967, for sentencing, and sentencing was postponed until the following day when Mr. Champion appeared. Mr. Champion followed the same procedure in the trial of the Crumb case.

In response to questions the trial judge testified:

"If I have ever tried a case that Mr. Champion has been involved in without having anywhere from one to several motions for continuances, I can't recall it. I don't think he has ever appeared at the time the case was set for trial in the first instance."

He further testified:

"He had Default Judgments taken against him because he has failed to appear and he's failed to file any pleadings and he failed to make appearances. He will file something and then fail to make an appearance to have it ruled on." * * * "This conduct has been going on for ten years."

"I have an average of three people a week walk in or come in to see me asking, for example, why I don't hear their case, and I say, 'I don't know what you're talking about; what case is that?'" (referring to Champion's cases).

"As to Mr. Champion's competency, I think he is most competent. He is a very good lawyer."

In response to the Association's evidence Mr. Champion testified at length. He admitted being slow in handling the business of some of his clients and in this connection testified in part:

"This I will be frank with the Board about, that I've been derelict—there's no answer to that." * * * "There have been extenuating circumstances down the line in this thing * * *".

"I didn't realize the time situation was like it is."

In connection with the Eaves complaint Mr. Champion testified:

"Q. It sounds to me as if your job in this deal with Eaves was to just keep him in his house as long as you could.

"Mr. Champion: Uh huh, that's correct. And I was—he asked me to keep him in for a period of six months. I told him that I would certainly do all that I could. I kept him in much longer than that." (This violates his oath as an attorney.)

In connection with his applications for continuances in criminal cases Mr. Champion testified:

"Well, I'll tell you one thing, gentlemen, I've played the old coon on a log game, I've done it the best I can. I have used time to my advantage."

"With anybody, I'll do the best I can to delay it if it's in a criminal case, in a criminal case sometimes you can use time to your advantage."

"Q. You say that you tried to delay things in a matter?"

"Mr. Champion: Time is a great healer of problems."

In connection with his remaining mute in the trials of the Bearden and Crumb cases Mr. Champion testified:

"Q. Didn't you think that by setting through the trials that you could get a reversal"

"Mr. Champion: That is not the—all the time I am working things through my mind. . I am not going to say that any of these things didn't escape my mind."

In Mr. Champion's appearance before the Board he seemed to be of the opinion that most of his troubles were provoked by the treatment he had received from the trial judge. However, in that connection he was asked: "Mr. Champion, do you think that if you would just straighten up and practice law as you're capable of practicing, that maybe in that way you could make your peace with Judge Shilling?" "A. I believe it would help."—"Q. It seems to me that if you would take time to get straightened up and practice law like the other lawyers, that you could clear up this trouble that you're having with Judge Shilling." "A. I believe you are right."

In Mr. Champion's briefs he continues to prosecute the district judge; he finds fault with counsel for the Bar Association in failing to advise him that the hearing to determine his moral qualifications and his competency to practice law would be an adversary proceeding; criticizes the Association for exposing him by sending an investigator into his community to investigate him, and finds fault with the Rules for reinstatement to practice following suspension for failure to pay bar dues.

It may be that some of Mr. Champion's complaints have some merit. But in noticing his complaints we do not lose sight of the fact that it's Respondent's conduct that is on trial.

Canon 21, Canons of Professional Ethics, 5, Ch. 1, App. 3, O.S.1961, Vol. 1, p. 377 (approved and adopted by this Court in 1958), provides:

"It is the duty of the lawyer not only to his client, but also to the Courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes."

In State ex rel. Oklahoma Bar Association v. Foster, Okl., 454 P.2d 654, we held that illness of an attorney does not necessarily shield the attorney from his professional responsibility to his client, and where the facts warrant the attorney may be disciplined notwithstanding his illness. In the body of the opinion we said:

"An attorney should never forget that he occupies a very important role in the administration of justice. He is an officer of the courts. In a very real sense he is an officer of the third branch of government. He is licensed to assist litigants and the courts in the administration of justice. * * * The wheels of justice should start turning when an attorney accepts employment. As an officer of the court respondent must share some of the responsibility for the expeditious administration of justice when he accepts professional employment."

From Mr. Champion's conduct and testimony, as revealed by the record in this proceeding, it would appear that he has been unaware of his responsibilities as an attorney; and unaware of the effort that has been made by the Bench and Bar during recent years to upgrade both the capacity and conduct of lawyers and judges. In the Preamble to the Canons of Professional Ethics, as adopted by this Court in 1958, it is said:

"In America, where the stability of the Courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing Justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiability of its administration. The future of the Republic, to a great extent, depends upon

our maintenance of Justice pure and unsullied. It cannot be so maintained, unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men."

The concept that "a lawyer is an officer of the courts" is not an idle expression to impress the laity, but is indicative of his responsibility to assist the courts in the administration of justice.

Respondent was aware that he was ill, and as he testified, more aware of that fact than any one else. He makes a point of the fact that he offered to return his fees in the Bearden and Crumb cases so that other counsel could be employed. The trial judge did not refuse that offer, but agreed to appoint defense counsel at the expense of the State. Mr. Champion did not return the fees, did not assist his clients in the selection of other counsel, but elected to stand mute. As an officer of the court, sharing the responsibility of the court for the proper administration of justice both to his clients as well as to the Public, his duty was clear; either return the fees, or share his fees and employ competent counsel, or else try the cases. He did neither.

Mr. Champion's testimony that "I have used time to my advantage—I'll do the best I can to delay it if it's in a criminal case— Time is a great healer of problems"—tends to corroborate the trial judge's testimony "If I have ever tried a case that Mr. Champion has been involved in without having anywhere from one to several motions for continuances, I can't recall it."

We conclude that Mr. Champion's conduct in the Bearden and Crumb cases was indefensible and indicates an irresponsibility to his clients as well as to the courts.

In view of Respondent's contention that he was not aware that the hearing before the Board would be an adversary proceeding we have permitted him to file evidence in his behalf which was not considered by the Board of Governors. We have considered this evidence in connection with the record before us and have concluded that Respondent has been afforded due process, and that he must be disciplined.

The record discloses that Mr. Champion has been a general practitioner in Ardmore, Oklahoma, for almost thirty years. He is evaluated by the District Judge as "most competent" and "a very good lawyer." Since the death of his father and other members of the "Champion" partnership he has been a "solo" practitioner. He testified that he and his wife have had marital difficulties and that his son's health has consumed much of his time. He does have problems with his health and has been ill. He stated at the conclusion of the hearing before the Board of Governors that the evidence presented made him aware of his derelictions. He stated that he was not equipped to earn a living except in the practice of law. He requested reinstatement, and agreed that if reinstated to the practice of law he would complete the probate proceedings he has pending and be more attentive to his clients and responsive to the courts.

We are of the view that the Board's recommendation that he be denied reinstatement is supported by the evidence, However, it is our further view that he should be publicly reprimanded and we do so, believing that his record as herein exposed and our comments adequately does so. We have concluded to postpone final action on Respondent's application for reinstatement for one year from the effective date of this decision, or until further order of this Court, and he will be on probation during that period. His temporary permit to practice law will continue during the probation period or until the further order of the Court. He will pay accruing Bar Dues. He will be required to pay the cost of the transcript in this proceeding during his probation period, and may do so in installments in such manner as may be authorized by Order of this Court.

IRWIN, C. J., and DAVISON, WILLIAMS, BLACKBIRD and LAVENDER, JJ., concur.

HODGES and McINERNEY, JJ., dissent.

McINERNEY, Justice (dissenting).

The evidence adduced at respondent's lengthy hearing, as summarized in the majority opinion, indicates to me the inability of respondent to conduct himself within the framework of the Canons of Professional Ethics. The administration of justice, in my opinion, would be better served by the denial of the application for reinstatement to the practice of law on the grounds of respondent's demonstrated lack of moral qualifications and competency to practice law.

I dissent from the majority opinion.

I am authorized to state that Justice HODGES concurs in these views.