### STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

### William D. FORE, Respondent.

### No. S.C.B.D. No. 2547.

Supreme Court of Oklahoma.

March 8, 1977.

---

Paul M. Vassar, Gen. Counsel, John Paul Johnson, Associate Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

William D. Fore, pro se.

## ORDER OF SUSPENSION

BARNES, Justice:

This matter is before us for review and approval of a Report of the Trial Authority appointed by this Court and under the provisions of Rules Creating and Controlling the Oklahoma Bar Association, Articles IX and X, 5 O.S.1971, Chapter 1, Appendix 1.

A complaint was filed against Respondent, William D. Fore, by the Oklahoma Bar Association, wherein it alleged in three separate counts that Respondent violated the Code of Professional Responsibility and should be disciplined.

Allegations of the complaint were that Respondent accepted professional employment from one Betty Earl to provide legal representation to her in establishing a will of her late father which was filed for probate in Oklahoma County; that when said matter came on for hearing Respondent appeared in a drunken and intoxicated condition and was unable to provide proper legal representation to his client. It was next alleged that on or about January 25, 1974, Respondent was to appear in the District Court of Grady County in the matter of Mary Ivie, in order to provide legal representation to the mother in a case involving possible termination of parental rights; that on said date Respondent appeared at the courthouse of Grady County in a drunken and intoxicated condition and was unable to participate in the hearing and provide legal representation to the mother, Linda Ivie. The final allegation of the complaint was that on or about July 30, 1973, Respondent appeared before the Vet-

eran's Administration Regional Office in Muskogee, Oklahoma, in order to provide legal representation to one Raymond Maciejewski; that, thereafter, Respondent charged Raymond Maciejewski a fee in excess of that allowed by Title 38 U.S.C.A., Section 3405, for said representation and thereby overreached his client.

On December 20, 1974, Respondent was notified in writing of the complaint and advised that a report which is adverse to him would be made by the General Counsel, Oklahoma Bar Association, to the Board of Governors of said Association. On January 24, 1975, a formal complaint was filed pursuant to the direction of the Board of Governors, and a copy of same was transmitted to Respondent. On November 5, 1975, hearing was held at the Oklahoma Bar Center, Oklahoma City, Oklahoma, Honorable Jess I. Miracle, District Judge, Trial Authority. The Respondent appeared personally pro se, and the Complainant appeared by and through John Paul Johnson, Associate General Counsel, Oklahoma Bar Association. Witnesses were sworn and testified, evidence was received, and closing arguments were presented on November 17, 1975.

The Trial Authority made his report November 17, 1975, containing Findings of Fact and Conclusions of Law, but made no recommendation for punishment or discipline that should be imposed. The Conclusions of Law are stated below:

"1. That the proceedings herein are valid and conform to law and the Rules Creating and Controlling the Oklahoma Bar Association.

"2. That the evidence presented in regard to Paragraph 3 (Earl case) of the Complaint is not legally sufficient to establish professional misconduct.

"3. That the evidence presented in regard to Paragraph 4 (Ivie case) of the Complaint establishes by a preponderance thereof that Respondent neglected a legal matter entrusted to him in violation of Canon 6 of the Code of Professional Responsibility.

"4. That the evidence presented in regard to Paragraph 5 (Maciejewski case) of the Complaint establishes by a preponderance thereof that Respondent collected an illegal fee in violation of Canon 2 of the Code of Professional Responsibility."

Complainant in its brief to this Court submits that Respondent should be disciplined for the violations of the Code of Professional Responsibility as specified in the report of the Trial Authority. The matter is now before this Court for study and review.

█ Summarized, the evidence shows that on or about June 6, 1972, Respondent was employed to provide legal representation to Betty Earl in establishing the will of her father, William Howard Burchfield, which was filed for probate in the District Court of Oklahoma County. When the cause came on for hearing Respondent appeared for Betty Earl; however, the testimony, as reflected by the record before this Court, is in contradiction as to whether the Respondent appeared in a drunken and intoxicated condition. Betty Earl testified that Respondent did appear in such condition, while Respondent's witnesses testified they could not testify Respondent was either drunk or not drunk. The Trial Authority found that the evidence presented in regard to the Earl case is not legally sufficient to establish professional misconduct. We agree.

The evidence further shows that Respondent was employed by Linda Ivie to provide legal representation to her as the mother of a minor child in a Juvenile Petition filed in Grady County; that said hearing was continued once at the request of Respondent and a second time by the Trial Judge when Respondent failed to appear. When the cause finally came on for hearing January 25, 1974, before the Honorable Clarence L. Maher, Associate District Judge, Grady County, Linda Ivie appeared personally without counsel and announced in open Court that she did not wish to proceed without her attorney, Respondent herein, being present. Whereupon, the Court appointed local counsel to represent Linda Ivie.

The record reflects that at the date and time of the Ivie hearing Respondent was in a public corridor of the same courthouse. Testimony of various employees of the Grady County Court Clerk's Office and District Attorney's Office indicates Respondent, at the time of the Ivie hearing, arrived at the courthouse and was assisted from the car to the courthouse door by his wife. It was apparently necessary for Respondent's wife to help him from the car and assist him in navigating the courthouse steps. Respondent was unsteady on his feet and had a somewhat disheveled appearance. When seen sitting on a bench in the hallway of the courthouse several witnesses testified he mumbled, was incoherent, slumped over, and in their opinion was intoxicated. The evidence appears to be overwhelming that Respondent, after having been driven to Chickasha by his wife, did not continue the few steps further to the place of hearing for the sole reason that he was incapacitated by virtue of being in a drunken and intoxicated condition.

Even assuming such neglect by Respondent was symptomatic of a deeper illness, it is well established in Oklahoma that illness does not shield an attorney from his professional responsibility. *State ex rel. Oklahoma Bar Association v. Champion,* 468 P.2d 794 (Okl.1970).

The Code of Professional Responsibility, 5 O.S.1971, Chapter 1, Appendix 3, DR 6–101(A)(3), provides:

"(A) A lawyer shall not:

\* \* \* \* \* \*

"(3) Neglect a legal matter entrusted to him."

We agree with the Trial Authority that the evidence presented in regard to the Ivie case establishes by a preponderance thereof that Respondent neglected a legal matter entrusted to him, in violation of Canon 6 of the Code of Professional Responsibility, and conducted himself in a most unprofessional manner. See also *In re Dibble,* 257 Or. 120, 478 P.2d 384 (1970), and 17 A.L.R.3d 692.

An examination of the record further discloses that on or about July 30, 1973, Respondent appeared at a hearing at the Veteran's Administration Regional Office in Muskogee, Oklahoma, to provide legal representation to one Raymond Maciejewski in the prosecution of a claim for Veteran's benefits. Complainant argues that the evidence herein is sufficient to predicate a finding that Respondent collected an illegal fee, in violation of Canon 2 of the Code of Professional Responsibility. We note the Code in DR 2–106(A) provides:

"A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

The proceeding in which Respondent appeared before the Veteran's Administration is governed by 38 U.S.C., §§ 3403–3405. Section 3403 requires certification that "no fee or compensation of any nature" will be charged. Section 3404(c) provides:

"The administrator shall determine and pay fees to agents or attorneys recognized under this section in allowed claims for monetary benefits under laws administered by the Veterans' Administration. Such fees—

\* \* \* \* \* \*

"(2) *shall not exceed $10 with respect to any one claim;* . . ." (Emphasis ours)

Attorney fees at variance with these statutes have been uniformly disallowed. See *In re Descamp's Estate,* 405 P. 331, 175 A.2d 827 (1961), dealing with this question in which the court said:

"\* \* \* in construing the public purpose of the Act, we may not interpret it to have limitations which are clearly not there and certainly not intended, having in view the obviously broad humanitarian purposes of the Act.

"While it would seem to be unquestioned that counsel's efforts in this case brought good results to the ward, and that those efforts in the open forum of wholesome professional activity would entitle him to a fee exceeding $10, we are here concerned not with the reasonable value of an attorney's services, but with an Act of Congress which definitely spells out what the fee shall be."

Notwithstanding the aforementioned statutory provisions, Respondent received and endorsed a cashier's check for $877.00 from his client, Raymond Maciejewski, as payment for legal representation at the Veteran's Administration hearing, which resulted in a back-pay award of $2,600.00. Furthermore, the record reflects that before his death, Maciejewski contacted an attorney in regard to Respondent's fee, apparently collected as a contingency fee, in violation of 38 U.S.C., § 3404(c). We think the evidence amply supports the Trial Authority's conclusion that Respondent collected an illegal fee in violation of DR 2-106(A).

The Canons of Professional Ethics of the American Bar Association have been adopted by this Court, and any member of the Association who violates the Canons shall be subject to discipline. Article IX, Section 7, Rules Creating and Controlling the Oklahoma Bar Association. From a careful study of the record, we are of the opinion that the conduct of the Respondent, as attorney in the aforementioned Ivie and Maciejewski cases, was in violation of the standards of professional ethics.

In consideration both of the high standards the public has a right to expect of the legal profession and of such probationary requirements which would inure to Respondent's ultimate best interest, we hold the gravity of Respondent's offenses, and the submitted proof, justify suspension for a period of three months, beginning with the date this opinion becomes final. However, it is our further order that Respondent be suspended thereafter until he shall affirmatively show that he is in all respects again able and qualified to resume his position as a member of the Bar of this State and that his resumption of practice of law will not be detrimental to the Bar or to the public interest, or until the further order of this Court.

WILLIAMS, BERRY, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., and DAVISON and IRWIN, JJ., concur in part and dissent in part.

LAVENDER, V. C. J., dissents.