**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Patrick DONNELLY, Respondent.**

**OBAD No. 997.**
**SCBD No. 3717.**

Supreme Court of Oklahoma.

Dec. 16, 1992.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

J. Terrence Pansza, Oklahoma City, for respondent.

OPALA, Chief Justice.

In this proceeding against a lawyer for imposition of professional discipline the issues to be decided are: (1) Is the record, consisting of the stipulated facts, sufficient for *de novo* review? (2) Should a lawyer's incapacity to practice law be considered in a Rule 6 disciplinary proceeding? and (3) Is public reprimand the appropriate disciplinary sanction to be imposed for respondent's professional misconduct? We answer all the issues in the affirmative.

Patrick Donnelly [Donnelly or respondent], a licensed lawyer, was charged by the Oklahoma Bar Association [Bar or complainant] with one count of professional misconduct and with failing to report his alcoholic affliction at an earlier disciplinary proceeding. The Bar and Donnelly then entered into a stipulation of facts and agreed conclusions of law with a joint recommendation for public censure to be imposed as discipline for the charged profes-

sional misconduct. A panel of the Professional Responsibility Tribunal [PRT] adopted the parties' offer for an agreed disposition of the proceeding.

## STIPULATION OF FACTS AS TO COUNT I

In late December of 1988 or early January 1989 Charles and Dorothy Mayfield delivered several invoices to respondent's office. These invoices indicate that an entity known as Diversified Well Services owed the Mayfields' business, Wireline, $14,260 for work performed by the latter in plugging abandoned wells, and $11,308.67 for tools lost in the hole.

Some time after turning the invoices over to Donnelly, the Mayfields asked him for a status report. Donnelly told them he had filed a lawsuit against Diversified; that Diversified had failed to answer; that he had taken a default judgment against the company; and that a hearing on assets would soon be held. Donnelly provided the Mayfields with a district court number for the case, though in fact he never filed one. The number so given was that of an unrelated case. Donnelly continued to deceive his clients until October or November of 1989, when he advised Charles Mayfield of the true facts: no case had been filed and no judgment taken.

The Mayfields retained other counsel who then filed suit. The Bar and Donnelly believe that the Mayfields settled their suit against Diversified Well Service for $15,750 plus $1,679 for attorney's fee and costs, and that Diversified paid $1,679 at the time of the settlement with the balance to be paid over a period of months.

## AGREED CONCLUSIONS OF LAW AS TO COUNT I

The parties concede that Donnelly's conduct violates the mandatory provisions of Rules 1.3, 1.4, and 8.4(c) of the Oklahoma Rules of Professional Conduct [1] and hence

---

1. The terms of Rules 1.3, 1.4 and 8.4(c), Oklahoma Rules of Professional Conduct, 5 O.S.Supp.1988, Ch. 1, App. 3-A, provide:

"Rule 1.3. **Diligence**
  A lawyer shall act with reasonable diligence and promptness in representing a client."

constitutes grounds for professional discipline.

## ALLEGATION TO ENHANCE DISCIPLINE

In another disciplinary proceeding Donnelly received on September 28, 1989 a private Supreme Court reprimand for conduct involving dishonesty, fraud, deceit or misrepresentation, neglect and for failing to carry out a contract of employment for professional services, all in violation of DR 1–102(A)(4), DR 6–101(A)(3) and DR 7–101(A)(2), Code of Professional Responsibility.[2]

## CONCESSION AS TO AVAILABLE MITIGATION

The parties submit that if respondent were called to testify, he would state that his professional misconduct in this and in the September 1989 disciplinary proceedings was actuated by his addiction to alcohol. He would further testify that on December 5, 1988 he entered an outpatient program at Presbyterian Hospital and completed it on December 14, 1989. Since December 14, 1989 respondent has regularly attended Alcoholics Anonymous meetings. Lastly, respondent would testify that since December of 1989 alcohol has not compromised or impeded his professional work. The Bar, on the other hand, would concede

that no complaints of unprofessional conduct have been brought against respondent since December of 1989.

## THE PARTIES' RECOMMENDED DISCIPLINE

The parties recommend that public reprimand be imposed as disciplinary sanction and that respondent be supervised by a designated member of the Lawyers Helping Lawyers Committee[3] for a period of one year.

In support of their recommendation the parties state that while respondent has been disciplined previously for alcohol-related professional misconduct, he did not then reveal his alcohol dependency. Because of respondent's continued abstention from alcohol, the parties believe that a suspension is not necessary for the public's protection.

### I

## THE RECORD BEFORE THE COURT IS COMPLETE FOR A *DE NOVO* REVIEW OF ALL FACTS RELEVANT TO THIS PROCEEDING

In bar disciplinary proceedings the Oklahoma Supreme Court has exclusive original jurisdiction.[4] The court's review is *de novo.*[5] Neither the trial authority's

---

"Rule 1.4. **Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."
"Rule 8.4(c) **Misconduct**
"It is professional misconduct for a lawyer to: * * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; * * *."

**2.** 5 O.S.1981, Ch. 1, App. 3. The Code of Professional Responsibility was superseded by the Oklahoma Rules of Professional Conduct, 5 O.S.Supp.1988, App. 3–A, effective July 1, 1988.

**3.** According to a Bar pamphlet, the Lawyers Helping Lawyers Committee was established by the Bar in 1985 to assist lawyers having difficul-

ties that adversely affect their practice. The Committee's purpose is to develop and maintain an organization within the Bar which can respond and assist the impaired lawyer through direct contact and appropriate referral, and assure the public of competent legal representation. The Committee is prepared to deal with a lawyer's personal problems caused by alcohol and other chemical abuse, physical illness, senility, divorce, depression and stress. We take judicial notice of this widely circulated official Bar material.

**4.** *State ex rel., Oklahoma Bar Association v. Raskin,* Okl., 642 P.2d 262, 265 (1982); *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113, 114 (1939).

**5.** *State ex rel. Okl. Bar Ass'n v. Lloyd,* Okl., 787 P.2d 855, 858 (1990); *Oklahoma Bar Ass'n v. Stubblefield,* Okl., 766 P.2d 979, 982 (1988); *State ex rel. Oklahoma Bar Ass'n v. Cantrell,* Okl., 734 P.2d 1292, 1293 (1987); *Raskin, supra* note 4 at 265–266.

findings nor its assessments with respect to the weight or credibility of the evidence can bind this court.[6] In a *de novo* review, in which the court exercises its constitutionally invested, nondelegable power to regulate both the practice of law and the legal practitioners,[7] a full-scale exploration of all relevant facts is required.[8] The court's task cannot be discharged unless the PRT panel submits a complete record of proceedings for a *de novo* examination of all pertinent issues.[9] Our responsibility is hence to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline [10] that would avoid the vice of visiting disparate treatment on the respondent-lawyer.[11]

The instant case presents *two concerns:* Donnelly's professional misconduct and his alcohol affliction. He has admitted all the allegations of the complaint. The record adequately explores the details of his professional misconduct. The sole question is whether the material before us adequately reflects the extent of Donnelly's professional incapacity from alcoholism.

■ Donnelly testified at the hearing that he had not had a drink of alcohol since July 22, 1988. He agreed to sign a "contract" with Lawyers Helping Lawyers to attend for a year four Alcoholics Anonymous meetings per week. If Donnelly fails to attend, his designated member-sponsor from Lawyers Helping Lawyers, whom he must see weekly, will report him to the Bar's General Counsel with a view to suggesting additional disciplinary measures. The parties stipulated Donnelly was legally competent and not currently consuming alcohol. The record is hence complete in the sense that it is adequate for our *de novo* review of Donnelly's professional misconduct and of his alcohol-related incapacity, if any, to practice law.

## II

### A LAWYER'S INCAPACITY TO PRACTICE MAY BE CONSIDERED IN A RULE 6 DISCIPLINARY PROCEEDING

■ In a disciplinary proceeding the court's responsibility is not to punish but to inquire into the lawyer's continued fitness, with a view to safeguarding the interests of the public, of the courts and of the legal profession.[12] A lawyer's professional misconduct and any personal incapacity that may have impeded a practitioner from performing at a minimum acceptable level are of equal importance in exploring for a solution that accords with the law's imperative of ensuring protection to the public from deficient lawyers.

**6.** *Raskin, supra* note 4 at 265.

**7.** *Raskin, supra* note 4 at 266; *Tweedy v. Oklahoma Bar Association,* Okl., 624 P.2d 1049, 1052 (1981).

**8.** *State ex rel. Oklahoma Bar Association v. Dugger,* Okl., 385 P.2d 486 (syllabus) (1963).

**9.** Rule 6.13, Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. Rule 6.13 provides in part that:
"... [T]he Trial Panel shall file with the Clerk of the Supreme Court a written report which *shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law* ..." (Emphasis added.)

**10.** A complete record is well-nigh necessary for review of a bar disciplinary proceeding. *State ex rel., Oklahoma Bar Association v. Moss,* Okl., 794 P.2d 403, 404 (1990); *State ex rel., Oklahoma Bar Association v. Samara,* Okl., 683 P.2d 979, 982 (1984); *State ex rel., Oklahoma Bar*

*Association v. Warzyn,* Okl., 624 P.2d 1068, 1071 (1981). *See also State ex rel., Oklahoma Bar Association v. Armstrong,* Okl., 791 P.2d 815, 816 (1990), which teaches that an interim suspension of an attorney cannot be made on an incomplete record. The same problem confronted this court in *State ex rel., Oklahoma Bar Association v. Lloyd,* SCBD No. 3455, received November 17, 1987 [*Lloyd I*]. There, we declined to accept the trial panel's recommendation and returned the case for a full evidentiary hearing before the panel whence it came. For an explanation, see *State ex rel., Okl. Bar Ass'n v. Lloyd, supra* note 5 at 856 [*Lloyd II*].

**11.** *State ex rel., Oklahoma Bar Association v. Perceful,* Okl., 796 P.2d 627, 630 (1990).

**12.** *State ex rel., Oklahoma Bar Association v. Colston,* Okl., 777 P.2d 920, 925 (1989); *State ex rel., Oklahoma Bar Association v. Moss,* Okl., 682 P.2d 205, 207 (1983); *State ex rel., Oklahoma Bar Association v. Harlton,* Okl., 669 P.2d 774, 777 (1983); *Raskin, supra* note 4 at 267.

In a Rule 6 [13] proceeding, the court focuses on the lawyer's *questionable past conduct.* This is necessary to safeguard public interest and to protect the judicial system. That focus also is designed to deter respondent from further offending behavior and other members of the Bar from like derelictions.[14] On the other hand, a Rule 10 [15] proceeding—one to determine a lawyer's incapacity to practice law—focuses exclusively not on the past but rather on the practitioner's *present condition* and its *future consequences.* The latter proceeding—that under Rule 10—triggers an inquest into the lawyer's present capacity untrammeled by the excess baggage of discipline implications. In Rule 10 process the main thrust is on prophylactic measures—those that would minimize potential risk to the public from a practitioner's incapacity. This does not mean that a Rule 10 respondent's disability may be used as a shield from professional responsibility.[16] Where the facts may so warrant discipline could still be imposed.[17]

A Rule 10 proceeding [18] allows for consideration of any conduct that may have resulted from the lawyer's incapacity. It matters not that the original complaint against the respondent was pressed as a Rule 6 cause.[19] In either case, the tribunal or this court may consider whether Rule 6 or Rule 10 process, either or both, is to be invoked for appropriate public redress.[20]

As for Donnelly's case, it is appropriate to take into account his alcoholism as both potentially incapacitating in the Rule 10

---

13. Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A.

14. *State of Oklahoma ex rel., Oklahoma Bar Association v. Arnett,* Okl., 815 P.2d 170, 171 (1991); *State ex rel., Oklahoma Bar Association v. Denton,* Okl., 598 P.2d 663, 665 (1979).

15. Rule 10 (Suspension For Personal Incapacity To Practice Law), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. Under this rule a lawyer may be considered incapable of practicing law as a result of habitual use of alcohol. *See* Rule 10.1(c), *infra.* The court will suspend the license of a lawyer found to be personally incapable of practicing law. *See* Rule 10.2, *infra.*

The terms of Rule 10.1(c) are:
"The term "personally incapable of practicing law" shall include:

\* \* \* \* \* \*

"(c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law. \* \* \* "
The terms of Rule 10.2 are:
"Whenever it has been determined that a lawyer is personally incapable of practicing law, his license to practice shall be suspended until reinstated by order of this Court."

16. *State ex rel., Oklahoma Bar Association v. Fore,* Okl., 562 P.2d 511, 514 (1977); *State ex rel., Oklahoma Bar Association v. Champion,* Okl., 468 P.2d 794, 797 (1970).

17. *Id.*

18. The terms of Rule 10.5, Rules Governing Disciplinary Proceedings, *supra* note 15, provide:

"Whenever a proceeding charging that a lawyer is personally incapable of practicing law is based upon conduct or neglect of duty in respect to the affairs of a client, the complaint must also allege specifically any such conduct which would justify the imposition of discipline, so that the Professional Responsibility Tribunal may hear evidence thereon, and in its report shall make findings and a recommendation as to whether the lawyer should be disciplined or whether he should be found personally incapable of practicing law."

19. It would be fortuitous indeed to assert that because a complaint was pressed as a Rule 6 disciplinary proceeding, only Rule 6 process may be invoked despite evidence which shows that the lawyer suffers from a personal incapacity. Judicial economy is best served by allowing incapacity to be considered in a Rule 6 proceeding. *Moss, supra* note 10 at 405 (the court allowed motion to consolidate disciplinary proceedings); *State ex rel., Oklahoma Bar Association v. Brewer,* Okl., 794 P.2d 397 (1990) (consolidation of reinstatement proceedings and disciplinary proceedings). In Donnelly's case, the proceedings were initiated under Rule 6. It was later that the PRT learned of Donnelly's alcoholism.

20. Rule 6.15(a), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A, provides that:

"The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss

sense, and as a mitigating factor [21] in fashioning the suitable Rule 6 discipline. Donnelly is no longer using alcohol. His affliction appears to have been arrested. The public will be adequately protected so long as he abstains from consumption. Donnelly's present condition neither compels nor warrants this court's finding that he is an incapacitated practitioner. His past conduct, on the other hand, calls for imposition of professional discipline.

## III

## A PUBLIC REPRIMAND IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PAST PROFESSIONAL MISCONDUCT

■ Lawyer misconduct falls within two basic categories: serious and minor.[22] A lawyer who has dealt *grave economic harm* to a client is a major offender.[23] The

economic injury to a client is reprehensible and calls for the imposition of harsh measures.

Donnelly has been charged with lacking diligence and promptness in representing his client,[24] not keeping his client informed,[25] deceiving a client,[26] and not revealing his alcoholism to the PRT in a previous disciplinary proceeding.[27] Donnelly cannot be perceived as falling into a class of most serious offenders.[28]

In *State ex rel., Oklahoma Bar Association v. Rozin*[29] we suspended a lawyer for sixty days and placed him on probation for two years for virtually the same misconduct as Donnelly's. *Rozin* is nonetheless markedly distinguishable from this case. The stipulated facts show that Donnelly's misconduct was the product of his alcoholism. In *Rozin* the lawyer was not similar-

the proceedings or *take such other action as it deems appropriate.*" (Emphasis added).

21. Alcoholism has been recognized as a relevant factor in fashioning appropriate discipline for a lawyer's professional misconduct. *Arnett, supra* note 14 at 170. This does not mean that alcoholism is per se a mitigating factor. *See State ex rel., Dabney v. Ledbetter,* 127 Okl. 85, 260 P. 454, 464 (1927), in which we held that voluntary intoxication would not be considered in mitigation.

Donnelly's case is distinguishable from *Ledbetter.* Donnelly recognized he had a problem, sought treatment, and informed his client of his misconduct. He did this on his own, before disciplinary ·proceedings were brought against him. This conduct is different from that of the lawyer who seeks treatment *after* disciplinary proceedings have been instituted against him. It is doubtful that Donnelly's alcoholism alone would be considered a mitigating factor if he had not recognized his problem and sought treatment. Allowing Donnelly to use his affliction as mitigation in these circumstances affords an incentive for other lawyers to seek help before misconduct arises or progresses to a more serious stage.

*Ledbetter* is distinguishable for yet another reason. When Ledbetter confronted disciplinary proceedings legal sale of alcohol was interdicted. *See 18th Amend., U.S. Const. (1919), repealed 1933.* Today, alcohol sales are licensed by the state. 37 O.S.1991 §§ 163.1 et seq. and §§ 502 et seq. Moreover, *Ledbetter* labels alcoholism as "voluntary." This is contrary to present-day philosophy which views alcoholism as a disease requiring treatment rather than mere vice. When alcoholism is tendered as a mitigating factor there must be some causal relation-

ship between one's alcoholic affliction and the professional misconduct charged.

22. The classification regime dividing offenders into serious and non-serious groups should not be interpreted to mean that a minor offense is insignificant. Misconduct generally erodes the confidence and trust of the public.

23. *Raskin, supra* note 4 at 267.

24. Rule 1.3, Oklahoma Rules of Professional Conduct, *supra* note 1.

25. Rule 1.4, Oklahoma Rules of Professional Conduct, *supra* note 1.

26. Rule 8.4(c), Oklahoma Rules of Professional Conduct, *supra* note 1.

27. · When responding to a grievance every lawyer has a duty to disclose all facts and circumstances pertaining to the alleged misconduct. Rule 5.1, Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. Donnelly asserts his misconduct in this disciplinary proceeding and in the previous one was the result of his alcohol affliction.

28. The charge that Donnelly deceived his clients into thinking that he had filed a lawsuit on their behalf could have resulted in serious economic harm. Fortunately Donnelly timely informed his client of his misconduct so that the latter could retain new counsel. Donnelly's client settled the case for $15,750 plus attorney's fee and costs. The record hence shows no economic harm from Donnelly's misconduct.

29. Okl., 824 P.2d 1127, 1130 (1991).

ly impaired. Although alcoholism is not by itself enough to mitigate discipline, the fact that Donnelly recognized his affliction, sought and cooperated in treatment,[30] and is now willing to be supervised, convinces us that less harsh discipline is indeed warranted.

The PRT's recommendation that Donnelly be publicly reprimanded is adopted. Donnelly *must* (a) not only be supervised by a designated member of the Lawyers Helping Lawyers Committee [31] for one year from the date this opinion becomes final, but *must* also participate for that length of time in the Alcoholics Anonymous program or in one of some other recognized organization as required by his agreement with the Lawyers Helping Lawyers program, (b) report his attendance and status to the designated member-sponsor of the Lawyers–Helping–Lawyers group and (c) pay costs incurred in this proceeding—$203.50—within 30 days of the date this opinion becomes final.

Respondent is publicly reprimanded for the misconduct of which he stands charged and ordered to pay costs.

All Justices concur.

---

30. See *supra* note 21 for a discussion of when alcoholism may be considered in mitigation.

31. The facilities afforded by a Lawyers Helping Lawyers Committee will enable this court to

better monitor a lawyer who may be at risk of losing professional capacity and hence of dealing harm to the public. *See supra* note 3.